## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **NORMAN INGRAM,** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ.Act.No. 07-12-*** |
| | ) | |
| **THOMAS CARROLL**, Warden | ) | |
| and **JOSEPH R. BIDEN, III**, Attorney | ) | |
| General for the State of Delaware | ) | |
| | ) | |
| Respondents. | ) | |

## ANSWER

Pursuant to Rule 5 of the Rules Governing Section 2254 Actions, 28 U.S.C. foll. § 2254, respondents state the following in response to the petition for a writ of habeas corpus:

In October 2004, the petitioner, Norman Ingram, was convicted in a Delaware Superior Court bench trial of trafficking in cocaine, possession with intent to deliver cocaine, maintaining a vehicle, possession of drug paraphernalia, possession of marijuana, and making a turn without signaling. (Superior Court Criminal Docket #0305008270, D.I. 21). Ingram was thereafter sentenced to a term of 30 years imprisonment, suspended after 15 years for possession with intent to deliver cocaine. Ingram was further sentenced to three years imprisonment for trafficking in cocaine. On appeal, the Delaware Supreme Court affirmed Ingram's convictions and sentence. *See Ingram v. State*, 2004 WL 2154325 (Del. 2004) (*Ingram I*) (Exhibit A). In January 2005, Ingram moved for postconviction relief. (Superior Court Criminal Docket #0305008270, D.I. 35). Ingram's motion was first referred to a Commissioner of the Superior Court.

1

*See* DEL. SUPER. CT. CRIM. R. 62.     The Superior Court commissioner's report recommended that Ingram's motion for postconviction relief be denied.  Ingram appealed the Commissioner's report directly to the Delaware Supreme Court; the appeal was dismissed as being an interlocutory appeal and thus unauthorized by the Court.  *Ingram v. State*, 2005 WL 3018288 (Del. 2005) (*Ingram II*) (Exhibit B).

The Delaware Supreme Court, in *Ingram I* (2004 WL 2154325, order at ¶¶2-4), summarized the circumstances of Ingram's arrest and trial:

> In May 2003, Officers Mentino DiSilvestro and Brian Talley, members of the Governor's Task Force, stopped Ingram's vehicle near Dover for failing to signal a left turn. DiSilvestro noticed a "faint odor" of alcohol, and that Ingram spoke with a low mumbled voice. After determining he had a valid license and no outstanding warrants, DiSilvestro asked Ingram to step out of the vehicle to perform field sobriety tests. Citing officer safety reasons, DiSilvestro first performed a pat-down search, which revealed neither contraband nor any weapons. As DiSilvestro began to administer the field tests, he observed two small plastic baggies protruding from Ingram's pocket.
>
> Separately, Talley, who intended to on conduct a pat-down search, asked Ingram's passenger, Thomas Cubbage, to step out of the vehicle. Talley discovered cocaine in Cubbage's pocket. After learning that Talley had seized Cubbage's cocaine, DiSilvestro suspected that the plastic bags in Ingram's pocket were drug paraphernalia and arrested Ingram. During a later, more thorough search at the police station, officers seized a small bag of marijuana and two bags of crack cocaine from Ingram's person. The larger bag of cocaine weighed slightly over twenty-five grams. Under the driver's seat of Ingram's car, the officers, in a separate search, discovered a digital scale containing cocaine residue, as well as a roll of toilet paper in the rear of the hatchback.
>
> Shortly before trial in December 2003, Ingram moved to suppress the evidence found on his person and in his car. After conducting a suppression hearing, the trial judge denied Ingram's motion. Following a bench trial, the judge convicted Ingram of several drug-related charges, including Trafficking in Cocaine and Possession with Intent to Deliver Cocaine.

Discussion

In his petition for federal habeas relief, petitioner raises two grounds for relief. Ingram's first claim is that the search of his vehicle and person was conducted without probable cause. Ingram's second claim is that the police officers perjured themselves by testifying that cocaine was found on Ingram's person.

*Claim One – Probable Cause to search Ingram's vehicle claim*

Ingram first argues that the police lacked the probable cause necessary to search his vehicle at the scene of his stop. This claim is not cognizable in federal habeas. "Federal habeas corpus is not available when state prisoners 'have been afforded the opportunity for full and fair consideration of their reliance upon the exclusionary rule with respect to seized evidence by the state courts at trial and on direct review...'" *United States ex rel. Petillo v. New Jersey*, 562 F.2d 903, 907 (3d Cir. 1977) (*quoting Stone v. Powell*, 428 U.S. 465, 489 (1976)); *Deputy v. Taylor*, 19 F.3d 1485, 1491 (3d Cir. 1993). At trial, Ingram moved to have all evidence seized by police at the time of his arrest suppressed because the police lacked a reasonable articulable suspicion or probable cause to search his vehicle. *Ingram I* at *2. The trial court denied Ingram's motion. *Id.* Ingram thereafter presented this claim to the Delaware Supreme Court in *Ingram I*. The Delaware Supreme Court held that the police did, indeed, have probable cause to search Ingram's vehicle. *Id.* Given the litigation on the Fourth Amendment issue in the state courts, *Stone* precludes consideration of the point now.

*Claim Two: Police perjury claim*

Ingram appears to argue that the drug evidence later used to convict him was not actually discovered on his person or in his vehicle, but rather was taken from a prior

3

arrest and used to wrongfully convict him.  Effectively, Ingram is arguing that the arresting officers in his case perjured themselves at trial.  Because Ingram has not exhausted state remedies on this claim, he is not entitled to relief.

In order to exhaust state remedies, Ingram must have presented to the state courts the legal and factual basis of the claims which he presents to the federal habeas court. *See* 28 U.S.C. § 2254(b); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Landano v. Rafferty*, 897 F.2d 661, 670-71 (3d Cir. 1990); *Gibson v. Scheidemantel*, 805 F.2d 135, 139 (3d Cir. 1986).  In turn, the claim must have been fairly presented to the state's highest court. *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir.1997) (citations omitted); *Coverdale v. Snyder,* 2000 WL 1897290, *2 (D.Del. Dec. 22, 2000) (Exhibit C). Fair presentation requires that the claim be presented in a manner which permits the state's highest court to consider the merits of the case. *See Castille v. Peoples*, 489 U.S. 346, 350 (1989); *Brown v. Allen,* 344 U.S. 443, 448-49 n. 3 (1953).  Though Ingram advanced this claim in a motion for new trial (filed in August 2006), he never appealed the Superior Court's September 12, 2006 decision.  (D.I. 2 at 7-8).  Accordingly, Ingram has not exhausted state remedies on this claim.

If, however, there is no available state remedy, then Ingram is excused from the exhaustion requirement. *See Teague v. Lane*, 489 U.S. 288, 298 (1989); *Wenger v. Frank*, 266 F.3d 218, 223 (3d Cir. 2001). He cannot now appeal to the state supreme court:  the appeal would be dismissed as untimely under state law.  *See Dorsey v. Carroll*, 393 F.Supp.2d 272, 276 (D.Del. 2005).  Ingram also cannot return to Superior Court to present his claims again in order to appeal from the ensuing decision:  because of his failure to appeal the earlier decision, state law precludes reconsideration of the claims

4

Ingram made in his 2006 motion for new trial. *Dorsey*, 393 F.Supp.2d at 276; *Qualls v. Williams*, 2004 WL 2283595, mem. op. at *3 (D.Del. Sept. 11, 1996) (Exhibit D). *See also Weedon v. State*, 750 A.2d 521, 527 (Del. 2000) (motion for new trial can be treated as motion for postconviction relief). Because there is no available state remedy, Ingram is excused from the exhaustion requirement. *See Teague*, 489 U.S. at 297-98; *Dorsey*, 393 F.Supp.2d at 276.

However, review of Ingram's claim is barred unless he shows cause for failing to have appealed and actual prejudice stemming from the alleged constitutional errors. *E.g., Beaty v. Patton*, 700 F.2d 110, 112-13 (3d Cir. 1983) (failure to appeal constitutes procedural default); *Dorsey*, 393 F.Supp.2d at 277; *Qualls*, mem. op. at *4. Ingram says nothing in his federal papers about his failure to have appealed the Superior Court decision. As a result, Ingram has not established cause for the default and that alone is enough to warrant dismissal. *E.g., Dorsey*, 393 F.Supp.2d at 277; *Qualls*, mem. op. at *4. Thus, Ingram is excused from the exhaustion requirement, but the claim is procedurally defaulted. *E.g., White v. Carroll*, 416 F.Supp.2d 270, 281 n. 10 (D.Del. 2006); *Kennedy v. Kearney,* 1996 WL 534877 at *2-3 (D.Del. 1996) (Exhibit E).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates cause for the default and resulting prejudice, or a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000). Ingram has not alleged cause for his failure to raise this perjury claim. As a result, Ingram has not established cause for his procedural default, and that warrants dismissal of his claim. *E.g., Elliott v. Kearney*, 2004 WL 724958, *4 n.5 (D. Del. Mar. 31, 2004)(Exhibit F). *See also Coleman*, 501 U.S.

at 757; *Smith v. Murray*, 477 U.S. 527, 533 (1986); *Carter v. Neal*, 910 F. Supp. 143, 151 (D. Del. 1995) (citing cases).

Conclusion

Based upon the Superior Court docket sheet, it appears that transcripts of Ingram's suppression hearing and trial have been prepared. In the event that the Court directs the production of any transcript, respondents cannot state with specificity when such transcript would be available. However, respondents reasonably anticipate that such production would take 90 days from the issuance of any such order by the Court.

/s/ James T. Wakley

Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
Del. Bar. ID No. 4612

DATE: May 11, 2007

Westlaw.

860 A.2d 810
860 A.2d 810, 2004 WL 2154325 (Del.Supr.)
(Cite as: 860 A.2d 810)

Page 1

**H**

Ingram v. State
Del.Supr.,2004.
(The decision of the Court is referenced in the Atlantic Reporter in a 'Table of Decisions Without Published Opinions.')
Supreme Court of Delaware.
Norman INGRAM Defendant Below, Appellant,
v.
STATE of Delaware, Plaintiff Below, Appellee.
**No. 617, 2003.**

Submitted June 8, 2004.
Decided Sept. 17, 2004.

**Background:** Defendant was convicted in the Superior Court, Kent County, of possession with intent to deliver cocaine. Defendant appealed.

**Holdings:** The Supreme Court held that:

(1) officer had probable cause to arrest defendant, and

(2) evidence supported finding that defendant intended to deliver cocaine.

Affirmed.

**[1] Automobiles 48A ☞349(8)**

48A Automobiles
    48AVII Offenses
        48AVII(B) Prosecution
            48Ak349 Arrest, Stop, or Inquiry; Bail or Deposit
                48Ak349(2) Grounds
                    48Ak349(8) k. Traffic Offense Stop Leading to Discovery of Unrelated Offense. Most Cited Cases
Officer had probable cause to arrest defendant for possession of cocaine; defendant, who had stepped out of vehicle for performance of field sobriety tests, had suspicious plastic bags protruding from his pocket, and officer's partner discovered cocaine on the person of passenger in defendant's vehicle.

**[2] Controlled Substances 96H ☞81**

96H Controlled Substances
    96HIII Prosecutions
        96Hk70 Weight and Sufficiency of Evidence
            96Hk81 k. Possession for Sale or Distribution. Most Cited Cases
Evidence was sufficient to support finding that defendant intended to deliver cocaine, thus supporting conviction for possession of cocaine with intent to deliver; defendant was found in possession of over twenty-seven grams of cocaine, digital scale containing cocaine residue was found under driver's seat of defendant's vehicle, toilet paper commonly used for packaging cocaine was found in rear of defendant's vehicle, defendant was in possession of $1000 in cash at time of arrest, and passenger in defendant's vehicle had a small amount of cocaine wrapped in tissue in his pocket.

Court Below: Superior Court of the State of Delaware in and for Kent County, Cr. ID # 0305008270.

Before STEELE, Chief Justice, BERGER and JACOBS, Justices.

*ORDER*

*1 This 17th day of September 2004, on consideration of the briefs of the parties, it appears to the Court that:

1. Norman Ingram appeals his conviction in the Superior Court of a variety of drug charges, claiming the trial judge erred by denying his motion to suppress evidence and that there was insufficient evidence to support his conviction for possession with intent to deliver cocaine. Because we find that Ingram's arrest was supported by independent facts justifying the police officer's conduct, we conclude that the trial judge acted within his discretion by denying the motion to suppress. Furthermore, because we find the testimonial and other credible evidence in combination support Ingram's possession with intent to deliver charge, we hold that the State sufficiently established Ingram's intent to deliver cocaine. Accord-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT A

860 A.2d 810
860 A.2d 810, 2004 WL 2154325 (Del.Supr.)
**(Cite as: 860 A.2d 810)**

ingly, we affirm.

2. In May 2003, Officers Mentino DiSilvestro and Brian Talley, members of the Governor's Task Force, stopped Ingram's vehicle near Dover for failing to signal a left turn. DiSilvestro noticed a "faint odor" of alcohol, and that Ingram spoke with a low mumbled voice. After determining he had a valid license and no outstanding warrants, DiSilvestro asked Ingram to step out of the vehicle to perform field sobriety tests. Citing officer safety reasons, DiSilvestro first performed a pat-down search, which revealed neither contraband nor any weapons. As DiSilvestro began to administer the field tests, he observed two small plastic baggies protruding from Ingram's pocket.

3. Separately, Talley, who intended to on conduct a pat-down search, asked Ingram's passenger, Thomas Cubbage, to step out of the vehicle. Talley discovered cocaine in Cubbage's pocket. After learning that Talley had seized Cubbage's cocaine, DiSilvestro suspected that the plastic bags in Ingram's pocket were drug paraphernalia and arrested Ingram. During a later, more thorough search at the police station, officers seized a small bag of marijuana and two bags of crack cocaine from Ingram's person. The larger bag of cocaine weighed slightly over twenty-five grams. Under the driver's seat of Ingram's car, the officers, in a separate search, discovered a digital scale containing cocaine residue, as well as a roll of toilet paper in the rear of the hatchback.

4. Shortly before trial in December 2003, Ingram moved to suppress the evidence found on his person and in his car. After conducting a suppression hearing, the trial judge denied Ingram's motion. Following a bench trial, the judge convicted Ingram of several drug-related charges, including Trafficking in Cocaine and Possession with Intent to Deliver Cocaine.[FN1]

> [FN1]. *State v. Ingram,* Del.Super., I.D. No. 0305008270 (Dec. 2, 2003).

5. On appeal, Ingram challenges the constitutionality of his arrest, contending that the trial judge erred by denying his motion to suppress evidence and that in-

sufficient evidence exists in the record to support his possession with intent to deliver conviction. We review a trial judge's denial of a motion to suppress evidence for abuse of discretion.[FN2] Our review for insufficient evidence requires that we determine whether, viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt.[FN3]

> [FN2]. *Purnell v. State,* 832 A.2d 714, 719 (Del.2003).

> [FN3]. *Bialach v. State,* 744 A.2d 983, 984 (Del.2000) *citing Davis v. State,* 453 A.2d 802,803 (Del.1982).

*2 6. Ingram does not contest the legality of the initial stop. Instead, he argues the officers had neither a reasonable suspicion nor probable cause to remove him and his passenger from the vehicle and search them. He insists the purpose of the original stop had concluded, and that under *Caldwell v. State,*[FN4] the Cubbage search constituted an additional investigation unsupported by independent facts justifying the officers' conduct. The Cubbage search was significant, Ingram argues, because DiSilvestro used the seizure from Cubbage as the basis for Ingram's arrest. Thus, Ingram contends, his arrest was constitutionally impermissible and the evidence was seized illegally.[FN5]

> [FN4]. 780 A.2d 1037 (Del.2001).

> [FN5]. Ingram does not, and cannot, contest the constitutionality of the Cubbage search. *See, e.g., Jones v. United States,* 362 U.S. 257, 261, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) (disallowing Fourth Amendment standing to those who "claim[ ] prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else."), *overruled on other grounds by United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (U.S.1980). Instead, Ingram's claim focuses on the officers' decision to arrest him only after discovering that Cubbage possessed

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

860 A.2d 810                                                                    Page 3
860 A.2d 810, 2004 WL 2154325 (Del.Supr.)
(Cite as: 860 A.2d 810)

cocaine.

7. Based on the testimony at the suppression hearing, the trial judge concluded the traffic stop was lawful.FN6 He found that the odor of alcohol and the perception of muffled speech justified the officer asking Ingram to step out of the vehicle for a field sobriety test. He also found that the officer had probable cause to arrest Ingram for drug paraphernalia after seeing the protruding plastic bags and learning that Ingram's passenger possessed cocaine. The trial judge concluded:

> FN6. Tr. Mot. to Suppress, at 3-6.

Since the plastic baggies were observed by the officer in plain view sticking out of the defendant's pocket while the officer was lawfully investigating his DUI suspicion, seizure of the baggies was lawful. As a result of the defendant's lawful arrest, [the] subsequent search of his person and the vehicle were lawful.FN7

> FN7. Id. at 6.

The trial judge then denied Ingram's motion and proceeded to trial.

[1] 8. On observing a motor vehicle violation, police officers may stop the car and order both driver and passenger out of the vehicle.FN8 Moreover, officers are permitted to conduct a pat-down search of all occupants for safety reasons.FN9 DiSilvestro smelled alcohol when he approached Ingram's vehicle and was conducting a lawful DUI investigation when he observed, in plain view, the suspicious plastic baggies. Once the officers learned that Cubbage possessed cocaine, that fact, plus Talley's observation of the plastic bags in plain view, constituted probable cause to arrest Ingram.

> FN8. See Maryland v. Wilson, 519 U.S. 408, 412-14, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997).

> FN9. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

9. In Caldwell, we held that in the absence of sup-

porting independent facts, the duration and intrusiveness of an officer's conduct must be reasonably related to the justification for the initial traffic stop.FN10 Contrary to Ingram's assertions, Caldwell is inapposite because the totality of circumstances here justify the duration and intrusiveness of the traffic stop in this case. The DUI investigation was reasonably related to the initial purpose of the stop, and Cubbage's cocaine possession was an independent fact that justified Ingram's arrest.FN11 Accordingly, we conclude the trial judge acted appropriately within his discretion when he denied Ingram's motion to suppress the drugs.

> FN10. See Caldwell, 780 A.2d at 1050-51 ("In the circumstances of this case, we conclude that the duration and intrusiveness of the traffic stop were not reasonably related to the justification for the [parking violation] stop ... and were not supported by independent facts justifying the officer's conduct.")

> FN11. Id.

10. Ingram also asserts that the State failed to establish his intent to deliver the cocaine. We have held that "possession, quantity[,] and packaging of drugs are not necessarily sufficient, standing alone, to prove intent to deliver."FN12 Intent to deliver, however, may be proven through "expert testimony, an admission by the defendant, or some other credible evidence."FN13

> FN12. Cline v. State, 720 A.2d 891, 892 (Del.1998).

> FN13. Id. at 893.

*3 11. The State attempted to establish Ingram's intent to deliver through the testimony of Talley, an experienced narcotics officer. Ingram maintains, however, that Talley's testimony was insufficient to establish intent to deliver. He claims that Talley focused primarily on the quantity of drugs seized, a characteristic legally insufficient to establish intent independently under our holding in Cline v. State.FN14

> FN14. Id.; see also Corey Caldwell v. State,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

860 A.2d 810
860 A.2d 810, 2004 WL 2154325 (Del.Supr.)
**(Cite as: 860 A.2d 810)**

Page 4

770 A.2d 522, 535 (Del.2001) ("The State cannot establish intent to deliver merely by proving possession of a particular quantity of cocaine, but [it] may establish intent to sell exclusively through circumstantial evidence.") (quotation marks omitted).

[2] 12. Talley testified that "the amount of drugs and the location, mostly the amount, is more than personal use," leading him to conclude that "the drugs were used for delivery or trafficking." [FN15] Ingram also points to Talley's admission during cross-examination that he (Talley) did not know how the drugs were packaged in this case. Despite any deficiencies in the testimony, however, the other credible evidence presented was sufficient to convict Ingram. The quantity of cocaine, over twenty-seven grams; the digital scale containing cocaine residue, found under the driver's seat of Ingram's vehicle; the partially used roll of toilet paper found in the rear area, often used for packaging cocaine; and the $1,000 cash seized from Ingram at the time of his arrest all supported an intent to deliver the cocaine. Furthermore, Ingram's passenger had a small amount of cocaine wrapped in tissue in his pocket, circumstantial evidence of a recent delivery. Accordingly, sufficient testimonial and other credible evidence supported Ingram's possession with intent to deliver conviction.

FN15. Trial Tr. at 70.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

Del.Supr.,2004.
Ingram v. State
860 A.2d 810, 2004 WL 2154325 (Del.Supr.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

886 A.2d 1278                                                              Page 1
886 A.2d 1278, 2005 WL 3018288 (Del.Supr.)
**(Cite as: 886 A.2d 1278)**

---

**H**
Ingram v. State
Del.Supr.,2005.
(The decision of the Court is referenced in the At-
lantic Reporter in a 'Table of Decisions Without Pub-
lished Opinions.')
Supreme Court of Delaware.
Norman INGRAM, Defendant Below-Appellant,
v.
STATE of Delaware, Plaintiff Below-Appellee.
**No. 465,2005.**

Submitted Oct. 7, 2005.
Decided Nov. 8, 2005.

Court Below-Superior Court of the State of Delaware
in and for Kent County, Cr.A. Nos. IK03-05-0865
thru 0867; IK03-05-0869 thru 0871.

Before STEELE, Chief Justice, BERGER and
RIDGELY, Justices.

*ORDER*

**\*1** This 8th day of November 2005, it appears to the
Court that:

(1) On September 30, 2005, the appellant, Norman
Ingram, filed a notice of appeal from the September
2, 2005 report and recommendations of a Superior
Court commissioner. The commissioner recommen-
ded that the Superior Court deny Ingram's motion for
postconviction relief pursuant to Superior Court
Criminal Rule 61.

(2) On September 30, 2005, the Clerk of this Court
issued a notice pursuant to Supreme Court Rule 29(b)
directing Ingram to show cause why his appeal
should not be dismissed based on this Court's lack of
jurisdiction to decide a criminal interlocutory appeal.
On October 7, 2005, Ingram filed a response to the
notice to show cause in which he asserted that his no-
tice of appeal was filed in a timely manner. He did
not address this Court's lack of jurisdiction to decide
a criminal interlocutory appeal.

(3) Under the Delaware Constitution, this Court may

review only a final judgment in a criminal case.[FN1]
Because the commissioner's report and recommenda-
tion is not a final judgment,[FN2] this Court does not
have jurisdiction to decide it.

FN1. Del. Const. art. IV, § 11(1)(b).

FN2. Super. Ct.Crim. R. 62(a)(5).

NOW, THEREFORE, IT IS ORDERED that, pursu-
ant to Supreme Court Rule 29(b), this appeal is DIS-
MISSED.

Del.Supr.,2005.
Ingram v. State
886 A.2d 1278, 2005 WL 3018288 (Del.Supr.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT B

Westlaw.

Not Reported in F.Supp.2d                                                                                    Page 1
Not Reported in F.Supp.2d, 2000 WL 1897290 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

**H**

Coverdale v. Snyder
D.Del.,2000.
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
Darryal D. COVERDALE, Plaintiff,
v.
Robert SNYDER, et al. Defendants.
Darryal D. COVERDALE, Petitioner,
v.
Robert SNYDER, Warden, and M. Jane Brady Attor-
ney General of the State of Delaware, Respondents.
**No. Civ.A. 98-718-GMS.**

Dec. 22, 2000.

Darryal D. Coverdale, Plaintiff, pro se.
Thomas E. Brown, State of Delaware Department of
Justice, Wilmington, DE, for Defendants.
Thomas E. Brown, of the State of Delaware Depart-
ment of Justice, Wilmington, Delaware, for Respond-
ents, Robert Snyder and M. Jane Brady.

*MEMORANDUM OPINION*
SLEET, J.

### I. INTRODUCTION

*1 The petitioner, Darryal D. Coverdale,
("Coverdale"), is currently incarcerated in the
Delaware Correctional Center located in Smyrna,
Delaware. He filed a petition for the issuance of a
writ of habeas corpus on December 28, 1998, with
the court (D.I.1). In his petition, Coverdale raises the
following four separate grounds for relief: (1) abuse
of discretion by the trial court, (2) prosecutorial mis-
conduct, (3) ineffective assistance of counsel and (4)
obstruction of justice by the State of Delaware.
Coverdale also filed a motion to compel discovery.
(D.I.14).[FN1] After considering the papers filed by
the parties the court finds that Coverdale's claims
lack merit. Therefore, it will dismiss the petition with
prejudice, deny the relief requested, and deny the mo-
tion as moot.[FN2]

FN1. Coverdale filed his motion on October
18, 1999. According to his motion, the re-

spondents violated a court order by not fur-
nishing transcripts of the proceedings.
However, the order to which Coverdale
refers states "[i]ndicate what transcripts of
pre-trial, trial, sentencing, and post-
conviction proceedings are available, when
they can be furnished, and what proceedings
have been recorded but not transcribed."
(D.I. 4 at ¶ 2(c)). The respondents' answer
states that no transcripts of the proceeding
were prepared but would be if the court so
ordered. Additionally, the respondents main-
tain that it would take more than 90 days to
make the transcripts available. Since the re-
spondents did not violate the terms of the
court's order and, in any event, Coverdale's
motion is moot, the court will deny it.

FN2. Coverdale has also filed an action
against numerous individuals for alleged vi-
olations of 42 U.S.C. § 1983 based on the
same facts alleged in his petition. As to the
issues raised in that action, the court will is-
sue a separate opinion in Civ.A.No.
98-718-GMS.

### II. BACKGROUND

In 1995, Coverdale plead guilty in Delaware Superior
Court to charges of theft and possession of drugs. For
the theft charge, he was sentenced to two years im-
prisonment at Level V incarceration, suspended for a
Level IV treatment program followed by a period of
probation. For the drug charge, Coverdale was sen-
tenced to one year in prison, suspended for one year
of probation. Upon a 1996 finding that he violated
the terms of his probation, The Delaware Superior
Court resentenced Coverdale to drug treatment fol-
lowed by an additional term of probation. In 1997,
Coverdale was arrested yet again on drug charges.
Since he had never reported to the Level IV drug
treatment program to which he was twice sentenced,
he was also charged with escape after conviction. *See
In re Coverdale*, No. 125, 1998, 1998 WL 188568, at
*1 (Del. April 7, 1998) (Coverdale I). On January 23,
1998, after holding a hearing at which Coverdale was

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT C

Not Reported in F.Supp.2d                                                                                    Page 2
Not Reported in F.Supp.2d, 2000 WL 1897290 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

represented by counsel, the Delaware Superior Court convicted him of violating his probation, revoked his probation, and sentenced him to two and a half years in prison.[FN3]

> FN3. The record indicates that Coverdale plead guilty to violating his probation.

Coverdale did not directly appeal the revocation of his probation. Instead, he sought a writ of mandamus from the Supreme Court of Delaware.[FN4] The Delaware Supreme Court dismissed the petition for a writ of mandamus on April 7, 1998. Coverdale then filed a motion for state post-conviction relief in the Delaware Superior Court challenging the finding that he violated his probation. On November 12, 1998, the Delaware Supreme Court affirmed the Delaware Superior Court's denial of post conviction relief.[FN5]

> FN4. In his petition, Coverdale alleges that he was improperly indicted for escape, that his court appointed counsel conspired with the State against him, and that the Delaware Superior Court improperly refused to act on a petition filed pursuant to Del.Supr. Ct.Crim. R. 61. He asked the court to (1) dismiss his 1997 escape and drug charges and (2) order the Superior Court to rule on his 1995 post-conviction motions. The Supreme Court found that (1) the Superior Court docket did not reflect that Coverdale filed any post-conviction motions in his 1995 case and (2) Coverdale did not show why he was entitled to the relief he sought since he could file post-conviction motions attacking his conviction. See *Coverdale I,* 1998 WL 188568 at *1-2.

> FN5. Coverdale moved for post-conviction relief for his 1997 charges in the Delaware Superior Court. The Superior Court denied such relief on April 3, 1998. The Delaware Supreme Court found that Coverdale's challenge to his conviction was not raised on direct appeal and that he did not make the required showing of cause and prejudice to overcome the procedural bar. See Del.Supr. Ct.Crim. R. 61(i)(3). Therefore, the

Delaware Supreme Court affirmed the denial of post-conviction relief. See *Coverdale v. State of Delaware,* No. 188, 1998, 1998 WL 985330, at *1 (Del. Nov. 12, 1998) (Coverdale II).

On December 23, 1998, Coverdale filed a petition for a writ of habeas corpus with the court. He raises the following claims:

1. The Superior Court judge who found that Coverdale violated his probation should have established on the record that the drug offense was the true basis for the violation and the court erred in denying post conviction relief.

2. The prosecutor intentionally manipulated the revocation of probation proceedings in order to hide the fact that a probation officer had violated Coverdale's rights.

*2 3. Coverdale's counsel worked as an "agent provocateur for the State" and thereby denied him effective assistance of counsel during "pretrial, trial, and failed to file an appeal."

4. All the state actors involved (including the Delaware Supreme Court) intentionally committed obstruction of justice to conceal violations of Coverdale's constitutional rights.

Finally, after Coverdale filed the instant petition for a writ of habeas corpus, he filed two additional motions for modification of his sentence with the Delaware Supreme Court. Both motions were denied as repetitive.[FN6] See *Coverdale v. State of Delaware,* No. 179, 2000, 2000 WL 1616599, at *1 (Del. Oct. 23, 2000) (Coverdale III). Since these motions were made and ruled upon after Coverdale filed the instant petition, the court will not consider whether the denial of the motions constitutes grounds for relief.

> FN6. Coverdale had already filed a similar motion in the Delaware Superior Court which was denied.

### III. STANDARD OF REVIEW

Because Coverdale filed his habeas petition after April 24, 1996, the terms of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") apply. See, e.g., *Lindh v. Murphy,* 521 U.S. 320, 326-27

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                   Page 3
Not Reported in F.Supp.2d, 2000 WL 1897290 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

(1997). Under AEDPA, a habeas petitioner who is in-
carcerated as a result of a state conviction cannot ob-
tain relief unless the decision of the state court was
either "contrary to, or involved an unreasonable ap-
plication of, clearly established federal law as de-
termined by the Supreme Court of the United States"
or "was based on an unreasonable determination of
the facts in light of the evidence presented in the
State court proceeding." See 28 U.S.C. § 2254(d); see
also Matteo v. Superintendent, SCI Albion, 171 F.3d
877, 880 (3d Cir.1999); Dickerson v. Vaughn, 90
F.3d 87, 90 (3d Cir.1996); Finch v. Snyder,
Civ.A.No. 98-537-SLR, 2000 WL 52162, at *3
(D.Del. Jan. 10, 2000). AEDPA also requires that the
court afford substantial deference to factual findings
and legal determinations made by state courts and
places the burden on the petitioner to rebut the pre-
sumption by clear and convincing evidence. See 28
U.S.C. § 2254(e) (as amended); Dickerson, 90 F.3d at
90.

IV. DISCUSSION

1. Exhaustion

As a threshold matter, the court must determine
whether Coverdale has exhausted all available state
remedies. See 28 U.S.C. § 2254(b)(1)(A). If a habeas
petition contains an unexhausted claim, the entire pe-
tition "must be dismissed without prejudice for fail-
ure to exhaust all state created remedies." Doctor v.
Walters, 96 F.3d 675, 678 (3d Cir.1996) (citing Rose
v. Lundy, 455 U.S. 509, 510 (1982)). A petitioner's
claim is considered exhausted if it has been fairly
presented to the state's highest court, either on direct
appeal or in a post conviction-proceeding. See Lam-
bert v. Blackwell, 134 F.3d 506, 513 (3d Cir.1997)
(citing Evans v. Court of Common Pleas, Delaware
Co., Pennsylvania, 959 F.2d 1227, 1230 (3d
Cir.1992)). To have fairly presented a claim, the peti-
tioner must have submitted to the state court both the
legal theory and the facts that are "substantially equi-
valent" to those asserted in his federal habeas peti-
tion. See Doctor, 96 F.3d at 678.

*3 Upon reviewing the record, the court finds that all
of Coverdale's claims are exhausted.[FN7] Coverdale
raised an ineffective assistance of counsel claim relat-

ing to his January 23, 1998 revocation hearing before
the Delaware Supreme Court. See D .I. 1, Ex. 1; see
also Coverdale II, 1998 WL 985330, at *1. Cover-
dale presented both the Delaware Superior Court and
the Delaware Supreme Court with his claims of ob-
struction of justice, prosecutorial misconduct, and ab-
use of discretion by asking for post-conviction relief,
petitioning for a writ of mandamus, and making sev-
eral motions for a reduction in his sentence. See D.I.
1, Ex. 1; see also Coverdale III, 2000 WL 1616599,
at *1; Coverdale II, 1998 WL 985330, at *1; Cover-
dale I, 1998 WL 188568, at *1.

> FN7. The respondents agree with this con-
> clusion. See Ans. at 2-3, 5. Nevertheless, the
> court must make an independent determina-
> tion whether the petitioner's claims are ex-
> hausted.

B. Procedurally Defaulted Claims

Although Coverdale has exhausted all the claims
presented in his petition, the court must inquire
whether he has complied with relevant state proced-
ural requirements before it can turn to the merits. See
Caswell v. Ryan, 953 F.2d 853, 860 (3d Cir.1992)
(finding that federal habeas court first determine
whether it "fairly appears" that state Supreme Court
based its decision primarily on state law); see also
Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)
(stating that allowing federal habeas petitioners to
proceed when procedural default in state court is re-
sponsible for absence of state remedies would under-
mine principles of comity and federalism). A state
court ruling resting on an adequate and independent
state procedural ground will bar federal habeas re-
view absent a showing of cause and prejudice by the
petitioner. See Wainwright v. Sykes, 433 U.S. 72,
81-82 (1977).

The Delaware Supreme Court dismissed Coverdale's
first, second, and fourth claims on the ground that he
neither raised the claims on direct appeal, nor
complied with Del.Supr. Ct.Crim. R. 61(i)(3).[FN8]
See Coverdale II, 1998 WL 985330, at *1. Numerous
courts in this district have held that Del.Supr.
Ct.Crim. R. 61(i) is an adequate and independent
state ground which bars review by a federal court.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1897290 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 4

*See, e.g., Gattis v. Snyder, 46 F.Supp.2d 344, 367 (D.Del.1999); Desmond v. Snyder, Civ.A.No. 96-327-GMS, 1999 WL 33220036, at \* 11 (D.Del. Nov. 16, 1999); Sullivan v. State of Delaware, Civ.A.No. 96-231-SLR, 1998 WL 231264, at \* 17 (Apr. 30, 1998); Laws v. Snyder, Civ.A.No. 95-579-SLR, 1996 WL 484835, at \* 3 (D.Del. Aug. 7, 1996); Flamer v. Chaffinch, 827 F.Supp. 1079, 1087-88 (D.Del.1993).* Therefore, the court finds that the Delaware Supreme Court articulated a "plain statement" that its decision rested on state law grounds. *See Harris v. Reed,* 501 U.S. 255, 263-64 (1989).

> FN8. Del.Supr. Ct.Crim. R. 61(i)(3) states that "Any ground for relief that was not asserted in a prior postconviction proceeding ... is thereafter barred, unless the movant shows (A) [c]ause for relief from procedural default and (B) [p]rejudice from violation of the movant's rights."

There are two ways Coverdale can overcome the state procedural bar to the court's review. Coverdale must either establish (1) cause for the default and actual prejudice to federal rights flowing therefrom or (2) that the court's refusal to hear his habeas claim would result in a fundamental miscarriage of justice. *See 28 U.S .C. § 2254(a); Coleman,* 501 U.S. at 750; *Finch,* 2000 WL 52162, at \* 5. The court finds that Coverdale has neither established cause and prejudice, nor demonstrated that he falls within the miscarriage of justice exception for his first, second, and fourth claims. As a result, the court cannot hear these claims.

\*4 To demonstrate cause for his procedural default, Coverdale must show that "something external to the petitioner, something that cannot be fairly attributable to him" impeded his efforts to comply with Del.Supr. Ct.Crim. R. 61(i)(3). *See Coleman,* 501 U.S. at 750; *see also McClesky v. Zant,* 499 U.S. 467, 493 (1991); *Murray v. Carrier,* 477 U.S. 478, 488 (1986).

Coverdale's petition does not allege any external impediment which prevented him from raising his first, second, and fourth claims in state post-conviction proceedings. Construing the petition in a broad light,

however, there is a hint of a "cause" argument in his attached state habeas petition. The state petition asserts that, "the creation of the Superior Court Criminal Rule 61 which itself due (sic) to the extremely technicle (sic) aspects deny an individual an adequate, substantive right to a review." The state petition later states, "[t]here can be no adequate vehicle for review where the Rule is itself beyond the understanding of those who must utilize it...." A lack of knowledge or an unawareness of procedural rules, however, is not an "external factor" which would have excused Coverdale's failure to comply with the state procedural requirements.[FN9] *See Klein v. Neal,* 45 F.3d 1395, 1398 (10th Cir.1995) (commenting that habeas petitioner's assertion that he was unaware of statute of limitations for state post-conviction relief was insufficient as a matter of law to constitute cause for procedural default); *see also Bailey v. Snyder,* Civ.A.No 96-85-SLR, 1996 WL 43492, at \* 5 (D.Del. July 31, 1996) (finding that Rule 61 furthers a legitimate state purpose of limiting stale claims, is 'clear cut,' and has been applied consistently). Certainly, numerous other state habeas petitioners in a similar situation have been able to abide by Del.Supr. Ct.Crim. R. 61; Coverdale's procedural default is attributable solely to him.[FN10]

> FN9. Ineffective assistance of counsel can establish cause for failure to comply with state procedural rules. Nevertheless, a finding of ineffective assistance of counsel itself requires a showing of cause and prejudice. Since the court will consider Coverdale's ineffective assistance of counsel claim below, it would be redundant to do so here in the context of procedural default. As discussed below, since Coverdale has not shown that he received ineffective assistance of counsel, it is axiomatic that such a claim cannot serve as the basis for his procedural default. *See infra.*

> FN10. Throughout his petition, Coverdale asserts what may be regarded as additional reasons for the cause of his procedural default. First, he alleges that the State and his attorney conspired to conceal their constitutional violations by preventing him from

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1897290 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

raising his claims for post-conviction relief. Second, he claims that Rule 61 "should be deemed non-existent" since it worked to conceal violations of his rights As mentioned above, however, the denial of post-conviction relief was based entirely on sound principles of law and well established state procedural rules. Further, countless courts have upheld Rule 61 and other rules like it; this court is unwilling to find that its neutral operation worked to deprive Coverdale of his rights. Finally, Coverdale offers nothing beyond conclusory allegations to support his statements.

Since Coverdale is unable to establish any external factor sufficient to overcome his procedural default, it is unnecessary for the court to consider whether he has suffered any prejudice. See, e.g., Coleman, 501 U.S. at 750-51; Finch, 2000 WL 52162, at *6; Laws, 1996 WL 484835, at *3. Nevertheless, the court notes that Coverdale has offered no evidence in support of his contention that the state procedural bar prejudiced his claim.[FN11] See Smith v. Murray, 477 U.S. 527, 533 (1986); Lawrie v. Snyder, 9 F.Supp.2d 143, 151 (D.Del.1995).

> FN11. Coverdale plead guilty, did not file a direct appeal, and does not now suggest that his plea was constitutionally infirm. He cannot, therefore, demonstrate any 'actual prejudice' flowing from his guilty plea. See Bousley v. United States, 523 U.S. 614, 618 (1998).

Finally, Coverdale can overcome his procedural default if he can show that failing to hear his petition would constitute a "miscarriage of justice." See Coleman, 501 U.S. at 750; Carrier, 477 U.S. at 496. This exception is reserved for claims of actual innocence. See, e.g., Schlup v. Delco, 513 U.S. 298, 327-28 (1995); Sawyer v. Whitley, 505 U.S. 333, 339-40 (1992); In re Minarik, 166 F.3d 591, 607 (3d Cir.1999). Coverdale plead guilty to violating his probation and has repeatedly asserted that he is not challenging the fact of his guilt. Furthermore, he does not specify how the court's failure to consider his claims would result in a miscarriage of justice. The

exception, therefore, is inapposite in this case. See Finch, 2000 WL 52162, at *6.

*5 Since the Delaware Supreme Court found that Coverdale's first, second, and fourth claims were procedurally barred under Del.Supr. Ct. Crim R. 61(i)(3), the court cannot consider them. Therefore, the court will dismiss the first, second, and fourth claims in Coverdale's petition.

## C. Ineffective Assistance of Counsel

Coverdale's third claim in his petition-ineffective assistance of counsel in connection with his January 23, 1998 violation of probation hearing-was properly before the Delaware Supreme Court.[FN12] See Ans. at 2. Since the claim was exhausted and can serve as a basis for procedural default, the court must examine its merits.

> FN12. As the respondents correctly note, Coverdale's petition alleges his counsel was ineffective "during pretrial and trial stages and failed to file an appeal." Coverdale's petition only refers to the January 23, 1998 violation of probation hearing; it does not provide any record support for a broader ineffective assistance of counsel claim. Nevertheless, any ineffective assistance of counsel claim beyond the violation of probation hearing was not presented to the state court. Since such claims would be unexhausted and, therefore, procedurally defaulted, the court cannot consider them. See 28 U.S.C. § 2254(b)(1)(A).

Claims in habeas petitions must be supported by the evidentiary record; mere allegations are not enough to warrant habeas relief. See Mayberry v. Petsock, 821 F.2d 179, 185 (3d. Cir.1987) (finding that habeas petitions require more than notice pleading); Rule 4 of the Rules Governing Habeas Corpus Cases (stating "[i]f it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal.").

The record demonstrates that Coverdale was represented by court appointed counsel at the January 23,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1998 violation of probation hearing. In his petition, Coverdale merely asserts that "[c]ounsel worked as an agent provocateur for the State during pretrial, trial stages (sic) and failed to file an appeal." He does not provide any evidence for these sweeping claims, however. Although Coverdale's state habeas petition contains additional claims of his counsel's ineffective assistance, they are equally conclusory and not supported by any record evidence.[FN13] Although the court must construe Coverdale's petition liberally, Coverdale's unsupported assertions that his attorney was an "agent provocateur" do not provide sufficient grounds for the court to grant habeas relief.

> FN13. Coverdale also asserts that his counsel was ineffective since he was unhappy with his representation and attempted to remove him on numerous occasions. This argument misunderstands the criteria for establishing a claim of ineffective assistance of counsel. Counsel is not required to provide the best representation imaginable. Instead, Coverdale must show that (1) his attorney's representation fell below an objective standard of reasonableness and (2) his counsel's actions were prejudicial to his defense, creating a reasonable probability that, but for the alleged errors, the result of the proceedings would have been different. *See, e.g., Zettlemoyer v. Fulcomer, 923 F.2d 284, 295 (3d Cir.1991)* (citing *Strickland v. Washington, 466 U.S. 668, 687-88 (1984)*). Thus, mere dissatisfaction with an attorney is enough. The court notes, however, that Coverdale was represented by an experienced attorney who has represented numerous individuals in Coverdale's position.

Aside from the lack of record evidence, Coverdale's ineffective assistance of counsel claim fails as a matter of law. Since state revocation of probation hearings are not a 'critical stage' of a criminal prosecution, there is no federal constitutional right to counsel. *See Gagnon v. Scarpelli, 411 U.S. 756, 787 (1973); see also United States v. Barnhart, 980 F.2d 219, 222 (3d. Cir1992)* (finding that revocation of probation 'does not result in a loss of liberty' since defendant has been adjudged guilty and is already un-

der supervision). Therefore, violation of probation hearings are subject to the minimum requirements of due process. *See Black v. Romano, 471 U.S. 606, 612 (1985)* (holding that basic requirements include a hearing, a neutral hearing body, written notice of claimed violations, disclosure of evidence, an opportunity to testify, an opportunity to confront witnesses and, in some cases, the assistance of counsel).

After requesting counsel, alleged probation violators only have a right to an attorney when they have a timely and colorable claim that (1) they have not committed the alleged violation of the conditions of probation, or (2) that even if the violation is uncontested, there are substantial justifiable or mitigating reasons that make revocation inappropriate and the reasons are complex or otherwise difficult to develop or present. *See Gagnon,* 411 U.S. at 790.

*6 Although Coverdale presumably timely requested representation for the January 23, 1998 revocation hearing, he has not satisfied the aforementioned test for when counsel is constitutionally required in probation revocation hearings. First, Coverdale plead guilty to violating his probation and does not now contest his guilt. Thus, he has not-and cannot-raise a colorable claim of innocence. Second, reading the petition liberally, it appears that Coverdale argues that counsel was necessary to plea negotiations and to appeal his case. Deciding whether to plea or appeal are relatively straightforward decisions and do not otherwise mitigate the conviction.[FN14] Since Coverdale did not have a constitutional right to an attorney at his probation revocation hearing, his claims of ineffective assistance of counsel do not present a basis upon which the court can grant habeas relief. *See Tillett v. Freeman, 868 F.2d 106, 108 (3d Cir.1989)* (finding that claim of ineffective assistance of counsel in state post-conviction hearing does not arise under the federal constitution); *see also 28 U.S.C. § 2254(a)* (stating that district court can only entertain a petition for writ of habeas corpus if petitioner is in custody pursuant to state court judgment in violation of federal constitution or laws or treaties of the United States). Therefore, the court will dismiss Coverdale's third claim in his petition for a writ of habeas corpus.[FN15]

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1897290 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

> FN14. This fact is self evident since only defendants can decide whether to accept a plea or appeal their case. Although defendants often seek the advice of counsel, many defendants make these decisions without the assistance of an attorney.

> FN15. Obviously, since Coverdale did not have a right to counsel at the revocation hearing it is unnecessary for the court to engage in the cause and prejudice analysis necessary for a finding of ineffective assistance of counsel.

### C. Certificate of Appealability

Upon consideration of Coverdale's petition and his objection to the respondents' answer, the court finds that Coverdale has not made a substantial showing of a denial of a constitutional right. Further, the court finds that the constitutional issues raised in the petition are not debatable among jurists of reason, adequate to receive encouragement to proceed further, or capable of being resolved in a different manner. *See, e.g., Morris v. Horn,* 187 F .3d 333, 339 (3d Cir.1999) (citing 28 U.S.C. § 2253(c)(1)(A)).

### V. CONCLUSION

For the reasons set forth above, the court finds that Coverdale's claims for habeas corpus relief under 28 U.S.C. § 2254 are either procedurally barred or otherwise fail on the merits. Therefore, the court will dismiss Coverdale's petition for habeas corpus relief with prejudice and deny the writ. Additionally, the court finds no basis upon which to issue a certificate of appealability. The court will issue an order in conjunction with this opinion.

D.Del.,2000.
Coverdale v. Snyder
Not Reported in F.Supp.2d, 2000 WL 1897290 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                                Page 1
Not Reported in F.Supp.2d, 2004 WL 2283595 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

**H**

Qualls v. Williams
D.Del.,2004.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Luther QUALLS, Petitioner,
v.
Raphael WILLIAMS, Warden, Respondent.
**No. Civ.A. 02-1257-KAJ.**

Sept. 29, 2004.

Luther Qualls. Petitioner, pro se.
Loren C. Meyers, Chief of Appeals Division,
Delaware Department of Justice, Wilmington,
Delaware, for Respondent.

MEMORANDUM OPINION
JORDAN, J.

I. INTRODUCTION

*1 Petitioner Luther Qualls is a Delaware inmate in
custody at the Delaware Correctional Center in
Smyrna, Delaware. Currently before the Court is
Qualls' petition for a writ of habeas corpus pursuant
to 28 U.S.C. § 2254. (D.I. 2; D.I. 7; D.I. 19.) For the
reasons that follow, I will dismiss Qualls' § 2254 pe-
tition.

II. FACTUAL AND PROCEDURAL BACK-
GROUND

In July 2000, a Delaware Superior Court grand jury
indictment charged Qualls with aggravated men-
acing, attempted second degree assault, possession of
a deadly weapon during the commission of a felony,
two counts of third degree unlawful sexual contact,
and resisting arrest. These charges stemmed from an
altercation occurring on June 3, 2000 at a restaurant/
bar located in Wilmington, Delaware.

In January 2001, a Delaware Superior Court jury con-
victed Qualls of aggravated menacing, the weapons
offense, and resisting arrest. The Superior Court
judge dismissed one count of unlawful sexual con-
tact, and the prosecution entered a *nolle prosequi* on

the attempted assault charge and the remaining count
of unlawful sexual contact. In April 2001, the Superi-
or Court sentenced Qualls to 26 years imprisonment,
suspended after 7 1/2 years, for a total of 14 3/4 years
at a halfway house and on probation. The Delaware
Supreme Court affirmed the convictions and sentence
on direct appeal. *Ryons v. State,* No.190,2001 (Del.
Oct. 17, 2001).

In January 2002, Qualls filed a motion for post-
conviction relief pursuant to Delaware Superior
Court Criminal Rule 61.[FN1] He alleged: (1) various
ineffective assistance of counsel claims; (2) the Su-
perior Court erred in denying his motion to dismiss
counsel; (3) the jury was racially biased and he was
prevented from taking part in the jury selection pro-
cess; (4) various evidentiary errors; and (5) prosec-
utorial misconduct. (D.I. 18, Rule 61 Motion in *State
v. Ryons (aka Qualls),* filed Jan. 14, 2002). The Su-
perior Court summarily dismissed the claims alleging
trial errors as barred by Delaware Superior Court
Rule 61(d)(4) because he should have raised these
claims during his direct appeal. (D.I. 18, *State v. Ry-
ons,* ID# :0006002195, Order (Del.Super.Ct. Jan. 30,
2002)). However, the Superior Court ordered trial
counsel to answer the ineffective assistance of coun-
sel allegations. *Id.* On March 11, 2002, the Superior
Court issued a Final Order dismissing the entire Rule
61 motion, finding that Qualls' trial counsel had
provided effective assistance of counsel. (D.I. 18,
*State v. Ryons,* ID# :0006002195, Final Order
(Del.Super.Ct. Mar. 11, 2002)). Qualls did not ap-
peal.

> FN1. Qualls filed a Rule 61 motion in April
> 2001, while his appeal was pending. The Su-
> perior Court denied the motion without pre-
> judice, holding that the pendency of Qualls'
> direct appeal divested it of jurisdiction.

In June and July of 2002, Qualls filed an initial §
2254 petition and a second petition in this Court.
(D.I. 2; D.I. 3.) After the State filed its Answer,
(D.I.16.), Qualls filed an amended petition. (D.I.19.)
The State filed an Answer to the Amended Petition,
(D.I.25.), and Qualls filed a "Motion of Opposition to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT D

Not Reported in F.Supp.2d                                                    Page 2
Not Reported in F.Supp.2d, 2004 WL 2283595 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Respondent [sic] Answer." [FN2] (D.I.28.)

> [FN2.] Because Qualls' "Motion in Opposi-
> tion" is really a Traverse, I will refer to it as
> a Traverse rather than as a motion.

*2 Quall's § 2254 petition is now ready for review.

### III. EXHAUSTION AND PROCEDURAL DE-
FAULT

A federal district court may consider a habeas peti-
tion filed by a state prisoner only "on the ground that
he is in custody in violation of the Constitution or
laws or treaties of the United States." 28 U.S.C. §
2254(a). When seeking habeas relief from a federal
court, a state petitioner must first exhaust remedies
available in the state courts. According to the Antiter-
rorism and Effective Death Penalty Act of 1996
("AEDPA"):
An application for a writ of habeas corpus on behalf
of a person in custody pursuant to the judgment of a
State court shall not be granted unless it appears that-
(A) the applicant has exhausted the remedies avail-
able in the courts of the State; or
(B) (i) there is an absence of available State correct-
ive process; or
(ii) circumstances exist that render such process inef-
fective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). The exhaustion requirement
is grounded on principles of comity to ensure that
state courts have the initial opportunity to review fed-
eral constitutional challenges to state convictions.
Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir.2000).

To satisfy the exhaustion requirement, a petitioner
must demonstrate that the claim was fairly presented
to the state's highest court, either on direct appeal or
in a post-conviction proceeding. See Lambert v.
Blackwell, 134 F.3d 506, 513 (3d Cir.1997) (citations
omitted); Coverdale v. Snyder, 2000 WL 1897290, at
*2 (D.Del. Dec. 22, 2000). However, if the petitioner
raised the issue on direct appeal in the correct proced-
ural manner, then the petitioner does not need to raise
the same issue again in a state post-conviction pro-
ceeding. Lambert v. Blackwell, 134 F.3d 506, 513 (3d
Cir.1996); Evans v. Court of Common Pleas,
Delaware County, Pennsylvania, 959 F.2d 1227,

1230 (3d Cir.1992) (citations omitted).

A petitioner's failure to exhaust state remedies will be
excused if state procedural rules preclude him from
seeking further relief in state courts. Lines v. Larkins,
208 F.3d 153, 160 (3d Cir.2000); Wenger v. Frank,
266 F.3d 218, 223 (3d Cir.2001); see Teague v. Lane,
489 U.S. 288, 297-98 (1989). Although deemed ex-
hausted, such claims are still considered to be proced-
urally defaulted. Lines, 208 F.3d at 160. Federal
courts may not consider the merits of procedurally
defaulted claims unless the petitioner demonstrates
either cause for the procedural default and actual pre-
judice resulting therefrom, or that a fundamental mis-
carriage of justice will result if the court does not re-
view the claim. McCandless v. Vaughn, 172 F.3d
255, 260 (3d Cir.1999); Coleman v. Thompson, 501
U.S. 722, 750-51 (1999); Caswell v. Ryan, 953 F.2d
853, 861-62 (3d Cir.1992).

To demonstrate cause for a procedural default, a peti-
tioner must show that "some objective factor external
to the defense impeded counsel's efforts to comply
with the State's procedural rule." Murray v. Carrier,
477 U.S. 478, 488 (1986). A petitioner can demon-
strate actual prejudice by showing "not merely that
the errors at ... trial created a possibility of prejudice,
but that they worked to his actual and substantial dis-
advantage, infecting his entire trial with error of con-
stitutional dimensions." Id. at 494.

*3 Alternatively, a federal court may excuse a proce-
dural default if the petitioner demonstrates that fail-
ure to review the claim will result in a fundamental
miscarriage of justice. Edwards v. Carpenter, 529
U.S. 446, 451 (2000); Wenger v. Frank, 266 F.3d
218, 224 (3d Cir.2001). In order to demonstrate a
miscarriage of justice, the petitioner must show that a
"constitutional violation has probably resulted in the
conviction of one who is actually innocent." Murray,
477 U.S. at 496. Actual innocence means factual in-
nocence, not legal insufficiency. Bousley v. United
States, 523 U.S. 614, 623 (1998). A petitioner estab-
lishes actual innocence by proving that no reasonable
juror would have voted to find him guilty beyond a
reasonable doubt. Sweger v. Chesney, 294 F.3d 506,
522-24 (3d Cir.2002).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2283595 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

### IV. DISCUSSION

Qualls filed an initial § 2254 petition, (D.I.2.), a second petition, (D.I.3.), and an amended petition. (D.I.19.) The State correctly asserts that the amended petition merely supplements the claims raised in Qualls' two previous petitions. (D.I.25.) Viewed together, these petitions allege six claims: (1) the prosecution failed to disclose all favorable evidence to Qualls, constituting prosecutorial misconduct and violating Qualls' due process and equal protection rights; (2) Qualls' trial counsel provided ineffective assistance by failing to object to inadmissible evidence, by failing to argue on the basis of the Delaware Rules of Evidence and other rules of law, and by failing to conduct a DNA investigation; (3) Qualls' conviction is illegal because the grand or petit jury was unconstitutionally selected and impaneled; (4) Qualls' conviction is illegal because the Delaware police officers never tagged all articles as evidence, thereby violating his due process rights; (5) the Superior Court violated Qualls' constitutional rights by refusing to appoint new trial counsel; and (6) his punishment for an offense for which he was acquitted constitutes a double jeopardy violation.

The State correctly asserts that Qualls has not exhausted state remedies. Qualls raised the same claims he asserts in his § 2254 petition to the Delaware Superior Court in his Rule 61 motion, but he never appealed the Superior Court's denial of the motion to the Delaware Supreme Court. His failure to exhaust state remedies is excused, however, because state procedural rules would prevent him from pursuing further state court relief. See *Coleman*, 501 U.S. at 750; *Lines*, 208 F.3d at 160. First, any attempt now to file an appeal with the Delaware Supreme Court would be dismissed as untimely. See Del.Supr. Ct. R. 6(a)(iii) (A notice of appeal must be filed within thirty days after entry of an order denying postconviction relief); *Carr v. State*, 554 A.2d 778, 779 (Del.1989) (Failure to file a notice of appeal within the thirty-day time limit deprives the Delaware Supreme Court of jurisdiction to hear the appeal). Second, because Qualls raised these claims in his 2002 Rule 61 motion, he cannot now assert these claims in a new Rule 61 motion to the Delaware Superior Court in an effort to appeal from the resulting

decision. See Del.Super. Ct.Crim. Rule 61(i)(4)(preventing further state review of claims formerly adjudicated); *Kendall v. Attorney General of Delaware*, 2002 WL 531221, at *4 (D.Del. Mar. 26, 2002).

*4 Although Qualls' failure to exhaust state remedies is excused, these claims are still procedurally defaulted. Consequently, federal habeas review is foreclosed unless Qualls establishes cause for his procedural default and prejudice resulting therefrom, or that a miscarriage of justice will result if the court refuses to hear the claims. See *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Harris*, 489 U.S. at 262; *Caswell v. Ryan*, 953 F.2d 853, 860-61 (3d Cir.1992).

In his Traverse, Qualls contends that he did not deliberately bypass state procedural rules when he failed to appeal the Superior Court denial of his Rule 61 motion. Rather, he blames his procedural default on his lack of legal knowledge and misinformation given to him by the prison paralegal. (D.I. 28 at ¶ 2.) To the extent these assertions are his attempt to establish cause for his default, they fail. "Generally, 'cause' cannot be based on the mere inadvertence of the petitioner or the petitioner's counsel to take an appeal." *Cristin v. Brennan*, 281 F.3d 404, 420 (3d Cir.2002). Qualls' failure to demonstrate cause obviates any need to reach the issue of prejudice. See *Smith v. Murray*, 477 U.S. 527, 533 (1986).

Finally, even though Qualls contends that he is innocent, his conclusory statement fails to satisfy the miscarriage of justice exception to the procedural default doctrine. (D.I. 28 at ¶¶ 3, "Conclusion"). In order to establish actual innocence sufficient to demonstrate a miscarriage of justice, a petitioner must assert "new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir.2004). Here, Qualls does not present any new evidence; rather, his Traverse merely reasserts the claims he raised in his § 2254 petitions. Thus, because Qualls has failed to provide any reason to excuse his procedural default, I will dismiss his § 2254 petition as procedurally barred.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2283595 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 4

### V. CERTIFICATE OF APPEALABILITY

Finally, I must decide whether to issue a certificate of appealability. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability may only be issued when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

When a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.* "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

*5 I conclude that Qualls' habeas petition must be dismissed as procedurally barred. Reasonable jurists would not find this conclusion to be unreasonable. Thus, I will not issue a certificate of appealability.

### V. CONCLUSION

For the reasons stated, Qualls' petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied. An appropriate Order shall issue.

### ORDER

At Wilmington, this 29 th day of September, 2004, consistent with the Memorandum Opinion issued this same day;

IT IS HEREBY ORDERED that:

1. Petitioner Luther Qualls' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DISMISSED, and the relief requested therein is

DENIED. (D.I. 2; D.I. 7; D.I. 19.)

2. The Court declines to issue a certificate of appealability for failure to satisfy the standard set forth in 28 U.S.C. § 2253(c)(2).

D.Del.,2004.
Qualls v. Williams
Not Reported in F.Supp.2d, 2004 WL 2283595 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 534877 (D.Del.)
(Cite as: Not Reported in F.Supp.)

Page 1

**H**

Kennedy v. Richard Kearney
D.Del.,1996.
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
John B. KENNEDY, Jr., Petitioner,
v.
Richard KEARNEY, Warden, Sussex Correctional
Institution and M. Jane Brady, Attorney General of
the State of Delaware, Respondents.
**Civ. A. No. 95-613-SLR.**

Sept. 11, 1996.

John B. Kennedy, Jr., petitioner, *pro se.*
Timothy J. Donovan, Jr., Esquire, Deputy Attorney
General, Delaware Department of Justice, Wilmington, Delaware, attorney for respondents.

MEMORANDUM OPINION
SUE L. ROBINSON, District Judge.

### I. INTRODUCTION

*1 On January 9, 1992, petitioner was sentenced to a twenty year term of imprisonment after pleading guilty to one count of first degree unlawful sexual intercourse. In his application for federal habeas corpus relief, presently pending before this court, he claims that his plea was not intelligently and voluntarily made and that the assistance he received from counsel was constitutionally deficient. Respondents have filed their answer, claiming that petitioner's claims are barred by his unexcused procedural default in presenting his claims to the state courts. For the reasons discussed below, the court will deny the requested relief and dismiss the petition.

### II. BACKGROUND

In May 1991, a grand jury indicted petitioner on nine separate felony counts related to the sexual molestation of petitioner's daughter over a period of three years. (D.I. 3 at Ex. C) Petitioner appeared in Superior Court on January 9, 1992, for the purpose of pleading guilty to one of the counts of the indictment. In exchange for petitioner's guilty plea, the State agreed to dismiss the other felony counts as well as charges of lewdness, indecent exposure, assault, and endangering the welfare of a child which were pending against petitioner in Family Court. (D.I. 3 at Ex. A3)

Before the plea colloquy began, petitioner's counsel notified the court that, due to petitioner's illiteracy, counsel had filled out the relevant forms for petitioner and had explained them to him. (D.I. 3 at Ex. A3-A4) In response to the court's questions, petitioner indicated that he wished to enter a guilty plea, that he understood the consequences of waiving a jury trial, and that he was aware of the range of penalties he could receive. (D.I. 3 at Ex. A4-A7) Petitioner stated, regarding his attorney, "He explained everything to me, went over everything.... He read everything over with me and my wife, went over everything real good, so I understand what I was doing." (D.I. 3 at Ex. A5-A6) Based on petitioner's responses, the court stated its finding that petitioner's plea was "knowingly, intelligently and voluntarily made." (D.I. 3 at Ex. A10) The court sentenced petitioner to a twenty-year term of incarceration, fifteen of which were to be mandatory. (D.I. 3 at Ex. A13)

In November 1994, petitioner filed a Rule 61 postconviction motion, in which he claimed that his representation by counsel had been deficient, that his guilty plea was defective, and that the warrant for his arrest had been based on false information. (D.I. 3 at Ex. D) The Superior Court denied the motion on the merits. (D.I. 3 at Ex. E) Petitioner did not appeal.

Petitioner filed a second Rule 61 motion in Superior Court on January 17, 1995. (D.I. 3 at Ex. D) In that motion, petitioner restated the grounds he had raised in his first motion for postconviction relief. The court denied the motion on procedural grounds, pursuant to Rule 61(i)(4), which provides:
Any ground for relief that was formerly adjudicated, whether in the proceeding leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, is thereafter barred, unless reconsideration of the claim is warranted in the interest of justice.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT E

Not Reported in F.Supp.                                                    Page 2
Not Reported in F.Supp., 1996 WL 534877 (D.Del.)
(Cite as: Not Reported in F.Supp.)

**\*2** Because each of petitioner's claims had been adjudicated in his previous Rule 61 motion, the court denied the second motion. (D.I. 3 at Ex. E) Petitioner appealed, and the Delaware Supreme Court affirmed. *Kennedy v. State,* No. 39, 1995 (Del. July 25, 1995).

### III. DISCUSSION

#### A. Exhaustion Requirement

Before the court can review petitioner's claims, the court must ascertain whether petitioner has exhausted all available state remedies. 28 U.S.C. § 2254(b). In making this determination, the court should inquire as to whether there is an "absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." 28 U.S.C. § 2254(b). To exhaust state remedies, a petitioner must have raised in the state courts the factual and legal premises of the claims for relief he asserts in the federal proceeding. *Gibson v. Scheidemantel,* 805 F.2d 135, 138 (3d Cir.1986).

"It is not enough that the petitioner presents to the state court the facts upon which a federal claim is based." The claim must be substantially equivalent to that litigated in the state court. Both the legal theory and the facts supporting a federal claim must have been submitted to the state court.

*O'Halloran v. Ryan,* 835 F.2d 506, 508 (3d Cir.1987) (citations omitted).

In the petition presently before the court, plaintiff has presented two grounds for relief: 1) ineffective assistance of counsel; and 2) a defective guilty plea. Petitioner has previously raised precisely the same claims before the state courts. His state remedies, therefore, are exhausted.

#### B. Procedural Default

The Delaware Supreme Court did not have an opportunity to rule on the merits of petitioner's claims because he failed to appeal the Superior Court's denial of his first postconviction motion. Petitioner's second postconviction motion was denied on procedural grounds. When petitioner appealed the denial of the second motion, the Delaware Supreme Court was barred from reaching the merits by Rule 61(i)(4).

Allowing applicants for federal habeas corpus relief to proceed in federal court where, as here, their own default is responsible for the absence of available state remedies would undermine the principles of comity and federalism that underlie the exhaustion requirement. *Coleman v. Thompson,* 501 U.S. 722 (1991). The United States Supreme Court has held that a state court ruling resting on an independent and adequate state procedural ground will bar federal review absent a showing of cause for and prejudice from the default. *Wainwright v. Sykes,* 433 U.S. 72, 81-82 (1977). The state courts' application of Rule 61(i)'s procedural default provision is a "plain statement" under *Harris v. Reed,* 489 U.S. 255 (1989), that the state court decisions rest on independent state grounds. Rule 61(i)(4) and similar rules in other states have also been held adequate to bar federal review under *Wainwright. See Bond v. Fulcomer,* 864 F.2d 306 (3d Cir.1989); *Beatty v. Patton,* 700 F.2d 110, 112-13 (3d Cir.1983); *Woodlin v. Snyder,* C.A. No. 95-138-JJF (D.Del. June 16, 1995).

**\*3** Because the state courts based their denial of petitioner's postconviction motion on an independent and adequate state procedural ground, this court may not consider the merits of petitioner's ineffective assistance of counsel claim unless he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims[ ] will result in the fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). The Supreme Court has held that " 'cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him...." *Id.* at 753, *citing Murray v. Carrier,* 477 U.S. 478, 488 (1986) (emphasis in original).

Petitioner seeks to explain his failure to appeal the denial of his first postconviction motion by stating that the trial court refused to supply him with a free transcript "to verify facts." (D.I. 2) As a result, petitioner contends, the Superior Court dismissed his motion in a summary fashion without benefit of the record of petitioner's plea. Petitioner does not explain why the lack of a transcript, while not deterring him

Not Reported in F.Supp.                                                    Page 3
Not Reported in F.Supp., 1996 WL 534877 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

from filing a Rule 61 motion in Superior Court,
would prevent him from appealing the denial of that
motion. As respondents point out, if petitioner be-
lieved that the decision to deny him the transcript was
erroneous, or that the lack of a transcript caused the
wrongful dismissal of his postconviction motion, he
had all the more reason to file an appeal. Petitioner's
explanation, therefore, does not constitute cause. Be-
cause petitioner has failed to show cause for his de-
fault, it is not necessary for this court to address the
issue of prejudice.

Petitioner also contends that the state courts should
have excused his procedural default "in the interest of
justice," and that their failure to do so constitutes a
"substantial miscarriage of justice." (D.I. 10) Where
a petitioner has defaulted his state remedies and has
not demonstrated cause and prejudice, a federal court
may entertain a petition for habeas corpus only if the
petitioner makes a showing of "actual innocence."
_Sawyer v. Whitley,_ 112 S.Ct. 2514, 2519 (1992);
_Murray,_ 477 U.S. at 496. Petitioner has made no
claim that he is actually innocent, and has articulated
no facts that would support such a claim. His proced-
ural default, therefore, is not excused.

### IV. CONCLUSION

For the reasons set forth above, the court will dismiss
the application for habeas corpus relief and deny the
writ of habeas corpus. An appropriate order will be
entered.

D.Del.,1996.
Kennedy v. Richard Kearney
Not Reported in F.Supp., 1996 WL 534877 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 724958 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

**H**
Elliott v. Kearney
D.Del.,2004.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Curtis ELLIOTT, Petitioner,
v.
Rick KEARNEY, Warden, Respondent.
**No. Civ.A. 02-205-KAJ.**

March 31, 2004.

Curtis Elliott, Petitioner, pro se.
Thomas E. Brown, Deputy Attorney General,
Delaware Department of Justice, Wilmington,
Delaware, for Respondent.

MEMORANDUM OPINION
JORDAN, J.

I. INTRODUCTION

*1 Petitioner Curtis Elliott is presently incarcerated at
the Delaware Correctional Facility ("D.C.C.") in
Smyrna, Delaware. On March 18, 2002, Elliott filed
an application for a writ of habeas corpus pursuant to
28 U.S.C. § 2254, acting pro se. (D.I.1.) He has also
filed a letter motion for the appointment of counsel
and DNA testing, a motion for summary judgment,
and a motion for issuance of the writ pursuant to 28
U.S.C. § 2243. (D.I. 37; D.I. 47; D.I. 55.) For the
reasons set forth below, the Court will deny Elliott's
petition. (D.I.1.) The Court will also deny his mo-
tions as moot. (D.I. 37; D.I. 47; D.I. 55.)

II. PROCEDURAL AND FACTUAL BACK-
GROUND

On April 13, 2000, Elliott attacked Desiderio S. Perez
with a knife. Consequently, Elliott was charged by
information in the Delaware Superior Court with four
offenses: possession of a deadly weapon during the
commission of a felony, second degree assault, pos-
session of a deadly weapon by a person prohibited,
and misdemeanor theft. On October 26, 2000, Elliott,
represented by counsel, pled guilty to second degree
assault. In return, the State entered a *nolle prosequi*

as to the remaining three charges.

On December 8, 2000, the Delaware Superior Court
sentenced Elliott to eight years incarceration, suspen-
ded after four years for decreasing levels of proba-
tion. Elliott did not file a direct appeal. *See Elliott v.
State,* No. 270, 2001, Order at ¶ 3 (Del. Aug. 23,
2001).

On April 17, 2001, Elliott filed his first motion for
state post-conviction relief pursuant to Superior
Court Criminal Rule 61, alleging ineffective assist-
ance of counsel. (D.I. 13, Ex. G to State's Motion to
Affirm in No. 270, 2001.) The Superior Court denied
the motion on April 27, 2002. Elliott never appealed.
(D.I. 13, Ex. H to State's Motion to Affirm in No.
270, 2001.)

In May 2001, Elliott filed a second Rule 61 motion.
(D.I. 13, Exs. I and J to State's Motion to Affirm in
No. 270,2001.) The Superior Court denied the mo-
tion, and the Delaware Supreme Court affirmed this
decision on appeal. *See Elliott v. State,* No. 270,2001
(Del. Aug. 23, 2001); (D.I. 13, Ex. A to State's Mo-
tion to Affirm in No. 270,2001.)

The Delaware Superior Court denied Elliott's third
Rule 61 motion. This decision was affirmed on ap-
peal. *Elliott v. State,* No. 554, 2001 (Del. Feb. 4,
2002).

Currently before the Court is Elliott's petition for the
federal writ of habeas corpus.

III. LEGAL PRINCIPLES GOVERNING EXHAUS-
TION AND PROCEDURAL DEFAULT

A federal district court may consider a habeas peti-
tion filed by a state prisoner only "on the ground that
he is in custody in violation of the Constitution or
laws or treaties of the United States." 28 U.S.C. §
2254(a). When seeking habeas relief from a federal
court, a state petitioner must first exhaust remedies
available in the state courts. According to the Antiter-
rorism and Effective Death Penalty Act of 1996
("AEDPA"):
An application for a writ of habeas corpus on behalf

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT F

of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that

-

*2 (A) the applicant has exhausted the remedies available in the courts of the State; or

(B) (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. _Werts v. Vaughn,_ 228 F.3d 178, 192 (3d Cir.2000). However, a state can expressly waive the exhaustion requirement. _See_ 28 U.S.C. § 2254(b)(3).

To satisfy the exhaustion requirement, a petitioner must demonstrate that the claim was fairly presented to the state's highest court, either on direct appeal or in a post-conviction proceeding. _See Lambert v. Blackwell,_ 134 F.3d 506, 513 (3d Cir.1997) (citations omitted); _Coverdale v. Snyder,_ 2000 WL 1897290, at *2 (D.Del. Dec. 22, 2000). However, if the petitioner raised the issue on direct appeal in the correct procedural manner, then the petitioner does not need to raise the same issue again in a state post-conviction proceeding. _Lambert v. Blackwell,_ 134 F.3d 506, 513 (3d Cir.1996); _Evans v. Court of Common Pleas, Delaware County, Pennsylvania,_ 959 F.2d 1227, 1230 (3d Cir.1992) (citations omitted).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. _Lines,_ 208 F.3d at 160; _Wenger v. Frank,_ 266 F.3d 218, 223 (3d Cir.2001); _see Teague v. Lane,_ 489 U.S. 288, 297-98 (1989). Although deemed exhausted, such claims are still considered to be procedurally defaulted. _Lines,_ 208 F.3d at 160. In addition, where a state court refuses to consider a petitioner's claims because he failed to comply with an independent and adequate state procedural rule, his claims are deemed exhausted but procedurally defaulted. _Harris v. Reed,_ 489 U.S. 255 263 (1989); _Werts v. Vaughn,_ 228 F.3d 178, 192 (3d Cir.2000). Federal courts may not consider the merits of procedurally defaulted claims un-

less the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claim. _McCandless v. Vaughn,_ 172 F.3d 255, 260 (3d Cir.1999); _Coleman v. Thompson,_ 501 U.S. 722, 750-51 (1999); _Caswell v. Ryan,_ 953 F.2d 853, 861-62 (3d Cir.1992).

To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." _Murray v. Carrier,_ 477 U.S. 478, 488 (1986). A petitioner can demonstrate actual prejudice by showing "not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." _Id._ at 494.

*3 Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. _Edwards v. Carpenter,_ 529 U.S. 446, 451 (2000); _Wenger v. Frank,_ 266 F.3d 218, 224 (3d Cir.2001). In order to demonstrate a miscarriage of justice, the petitioner must show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." _Murray,_ 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. _Bousley v. United States,_ 523 U.S. 614, 623 (1998). A petitioner establishes actual innocence by proving that no reasonable juror would have voted to find him guilty beyond a reasonable doubt. _Sweger v. Chesney,_ 294 F.3d 506, 522-24 (3d Cir.2002).

## IV. DISCUSSION

Elliott filed his habeas petition and supporting memorandum on March 18, 2002. [FN1] (D.I. 1; D.I.2.) He contends that his defense attorney provided ineffective assistance of counsel by failing to conduct DNA testing on the "alleged deadly weapon." (D.I. 1 at 5.) The State properly acknowledges that Elliott exhausted state remedies by presenting this argument to the Delaware Supreme Court in his second and third post-conviction appeals.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 3
Not Reported in F.Supp.2d, 2004 WL 724958 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

*See* Op. Br. In No. 270, 2002 at 10; *Smith v. Digmon,* 434 U.S. 332, 333 (1978); *Swanger v. Zimmerman,* 750 F.2d 291, 295 (3d Cir.1984).

> FN1. Since then, Elliott has filed numerous documents in support of his petition, either titled as traverses, memoranda in support, or even an amended petition. (D.I.29; D.I. 35; D.I. 38; D.I. 39; D.I. 41; D.I. 44). To the extent these documents merely support and expand the original ineffective assistance of counsel claim, the Court will consider them in its review.

A finding of exhaustion does not end the Court's inquiry, however, because a federal habeas court "must then assure itself that a habeas petitioner has complied with relevant state procedural requirements before it can delve into the claim of constitutional error in a state conviction." *Bond v. Fulcomer,* 864 F.2d 306, 310 (3d Cir.1989). Here, the State asks the Court to dismiss Elliott's petition as procedurally barred by the independent and adequate state law ground of Delaware Superior Court Criminal Rule 61(i)(2). (D.I. 10 at 2-4.)

The procedural default issue arises because Elliott did not raise his current ineffective assistance/DNA argument[FN2] in his first post-conviction motion. Instead, Elliott's first post-conviction motion alleged that his defense counsel provided ineffective assistance of counsel by not raising the issue of a conflict of interest between Elliott and the judge. (D.I. 13, Ex. G & Ex. H to the State's Motion to Affirm in No. 270,2001.) On April 27, 2001, the Superior Court denied this claim on the merits. (D.I. 13, Ex. H to the State's Motion to Affirm in No. 270,2001.)

> FN2. For ease of discussion, the Court will refer to Elliott's present ineffective assistance claim in this manner.

When Elliott did raise his ineffective assistance/DNA argument in his second post-conviction motion, the Superior Court denied the claim as procedurally barred under Rule 61(i)(2). Specifically, Elliott's failure to raise the issue in the first post-conviction motion barred him from raising it in his second post-

conviction motion.[FN3] (D.I.13, Ex. A.) On appeal, the Delaware Supreme Court affirmed this decision, stating that "[t]o the extent Elliott's motion included claims that were not made in his previous postconviction motion, the motion was procedurally barred as repetitive [under Super. Ct.Crim. R. 61(i)(2) ]." *Elliott v. State,* No.270, 2001, Order at ¶ 4 & n. 5 (Del. Aug. 23, 2001).

> FN3. The Superior Court also concluded that Elliott's claim did not satisfy the "interest of justice" exception to procedural default. (D.I. 13, Ex. A to State's Motion to Affirm in No. 270,2001.)

*4 By applying the procedural bar of Rule 61, the Delaware Supreme Court articulated a "plain statement," under *Harris v. Reed,* 489 U.S. 255, 263-64 (1989), that its decision rested on state law grounds. *See Ylst v. Nunnemaker,* 501 U.S. 797 (1991). This Court has repeatedly held that Rule 61(i)(2) constitutes an independent and adequate state procedural rule precluding federal habeas review. *Kirk v. Carroll,* 243 F.Supp.2d 125, 145 (D.Del.2003); *Maxion v. Snyder,* 2001 WL 848601, at *12 (D.Del. July 27, 2001); *Carter v. Neal,* 910 F.Supp. 143, 149-50 (D.Del.1995). As such, federal habeas review of this claim is precluded unless Elliott establishes cause for the default and prejudice resulting therefrom, or that a miscarriage of justice will result if the Court refuses to hear his claim. *See* 28 U.S.C. § 2254(a); *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *Caswell v. Ryan,* 953 F.2d 853, 860-61 (3d Cir.1992).

Elliott alleges that, during the plea colloquy, the Delaware Superior Court and his attorney told him he could not appeal his guilty plea. He contends that this information prevented him from including the ineffective assistance/DNA argument in his first post-conviction motion.[FN4] (D.I.29.) In effect, Elliott is asserting that his counsel's statement and the Superior Court's statement regarding his right to appeal were an external factor constituting cause for his procedural default. However, Elliott has failed to demonstrate how this statement regarding an appeal prevented him from raising the ineffective assistance/DNA argument in his first post-conviction motion.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 724958 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

FN4. To the extent Elliott argues that these statements constitute cause for his failure to raise this claim on appeal, the argument fails. In Delaware, ineffective assistance of counsel claims should not first be brought on direct appeal, but rather, in a Rule 61 motion for post-conviction relief. *Williams v. State,* 682 A.2d 627, at * *3 (Del.1996) (collecting cases). Any information regarding his right to appeal had no effect on his ability to bring a Rule 61 motion.

His contention is even more puzzling because the statement regarding his right to appeal obviously did not prevent him from filing the post-conviction motion in the first place. Moreover, despite his repetitive assertions that he is not a lawyer and does not understand the law, a lack of legal knowledge does not constitute cause for procedural default.[FN5] *See Cristin v. Brennan,* 281 F.3d 404, 420 (3d Cir.2002) ("cause cannot be based on the mere inadvertence of the petitioner ... to take an appeal"); *Desmond v. Snyder,* 1999 WL 33220036, at *19 (D.Del. Nov. 16, 1999).

FN5. To the extent Elliott is alleging his counsel's ineffective assistance as cause for his failure to raise the issue in his first post-conviction motion, this contention fails. Ineffective assistance of counsel can only constitute cause for a procedural default if it rises to the level of a Sixth Amendment violation. *See Murray v. Carrier,* 477 U.S. at 488. Elliott had no right to representation during his post-conviction proceeding. *See Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987). His counsel's alleged failure to inform him of his right to raise issues in a Rule 61 motion therefore cannot establish cause for his procedural default. *Coleman,* 501 U.S. at 152; *Cristin,* 281 F.3d at 420.

Further, Elliott has not demonstrated actual prejudice resulting from his attorney's failure to provide DNA testing.[FN6] He argues that prejudice is shown by the fact that he would not have pled guilty if his attorney had done the DNA testing because such testing would have established his innocence. *See generally*

*Hill v. Lockhart,* 474 U.S. 52, 60 (1985) (in a guilty plea context, petitioner must demonstrate how the errors of counsel undermined his decision to plead guilty). However, this conclusory statement does not demonstrate actual prejudice. "Mere allegations by a defendant that he would have ple[d] differently and insisted on going to trial are insufficient to establish prejudice." *Werts v. Vaughn,* 228 F.3d at 193; *Thomas v. Snyder,* 2001 WL 1297812, at *4 (D.Del. Oct. 3, 2001).

FN6. Upon finding that Elliott has not established cause for his procedural default, the Court need not reach the question of whether he has shown any actual prejudice. *See Coleman,* 501 U.S. at 752, 757; *Smith v. Murray,* 477 U.S. 527, 533 (1986). However, because Elliott has submitted numerous documents addressing the procedural default issue, the Court will address the prejudice issue.

*5 Moreover, the fact that Elliott derived substantial benefits from pleading guilty increases his burden in establishing prejudice. In exchange for his plea, the State dropped three charges: possession of a deadly weapon during the commission of a felony, possession of a deadly weapon by a person prohibited, and misdemeanor theft. If a jury convicted Elliott of these charges, he would have faced a jail term significantly greater than his eight year sentence.

Finally, to the extent Elliott argues that his attorney's failure to provide DNA testing prejudiced him because he entered his plea involuntarily, this argument fails. Elliott himself acknowledges that he knew prior to accepting the plea that his counsel had not conducted DNA testing on the weapon. However, he still decided to plead guilty. The Superior Court engaged in a thorough plea colloquy, affording Elliott numerous occasions to reject the the plea agreement. If, as Elliott now claims, he was dissatisfied with his attorney's failure to provide DNA testing, he could have mentioned this fact at the plea colloquy. Yet, Elliott told the Superior Court that he was satisfied with his legal representation. (D.I. 13, Ex. F at 6 to State's Motion to Affirm in No. 270,2001.) Elliott is bound by these statements made under oath in open court. *See*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 724958 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 5

*Blackledge v. Allison,* 431 U.S. 63, 73-4 (1997); *Lesko v. Lehman,* 925 F.2d 1527, 1537 (3d Cir.1991).

The only other way for the Court to excuse Elliott's procedural default is under the "miscarriage of justice exception." Pursuant to this exception, a court may excuse a procedural default if the petitioner demonstrates actual innocence. *See Murray,* 477 U.S. at 496. However, the "miscarriage of justice" exception applies only in "extraordinary cases." *See Coleman,* 501 U.S. at 749.

As explained above, the record demonstrates that Elliott knowingly and voluntarily entered his guilty plea. Indeed, Elliott specifically stated that he did, in fact, assault the victim with a knife. (D.I. 13, Ex. F at 5 to State's Motion to Affirm in No. 270,2001.) This "[s]olemn declaration in open court carr[ies] a strong presumption of verity" which is not overcome by Elliott's unsubstantiated claims of actual innocence. *Blackledge,* 431 U.S. at 73-74. As such, his assertions fail to demonstrate that the Court's refusal to review this claim will result in a fundamental miscarriage of justice.

In short, the Court concludes that Elliott has failed to provide a reason excusing his procedural default. Accordingly, his federal habeas petition will be dismissed as procedurally barred.

## V. MOTIONS

In addition to his habeas petition, Elliott has filed three motions: a letter motion for the appointment of counsel and DNA testing, a motion for summary judgment, and a motion for issuance of the writ pursuant to 28 U.S.C. § 2243. (D.I. 37; D.I. 47; D.I. 55.)

It is well settled that a petitioner does not have a Sixth Amendment right to counsel in a habeas proceeding. *See Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987); *United States v. Roberson,* 194 F.3d 408, 415 n. 5 (3d Cir.1999). However, a district court may appoint counsel to represent an indigent habeas petitioner "if the interest of justice so requires." Rule 8(c), 28 U.S.C. *foll.* § 2254. As explained above, the Court is dismissing Petitioner's § 2254 petition. In these circumstances, the "interests of justice" do not require the appointment of counsel. *See* 18 U.S.C. §

3006A(a)(2)(B). Thus, the Court will deny this motion, and his concurrent request for DNA testing, as moot.

*6 Similarly, because the Court has reviewed Elliott's habeas petition and has concluded that federal habeas review is procedurally barred, the Court will deny Elliott's motions for summary judgment and for issuance of the writ under 28 U.S.C. § 2243 as moot.

## VI. CERTIFICATE OF APPEALABILITY

Finally, this Court must decide whether to issue a certificate of appealabilty. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability may only be issued when a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner establishes a "substantial showing" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

Additionally, when a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find the following debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.* "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

The Court concludes that Elliott's claims are procedurally barred. Reasonable jurists would not find this conclusion unreasonable. Consequently, Elliott has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not issue.

## VII. CONCLUSION

For the foregoing reasons, the Court will deny Elli-

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 724958 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 6

ott's § 2254 petition, and finds no basis for the issuance of a certificate of appealabilty. An appropriate order will follow.

ORDER

For the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY ORDERED that:
1. Curtis Ellliot's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (D.I.1.) is DENIED.
2. Curtis Elliott's motion for the appointment of counsel and DNA testing is DENIED as moot. (D.I.37.)
3. Curtis Elliott's motion for summary judgment is DENIED as moot. (D.I.47.)
4. Curtis Elliott's motion for issuance of the writ under 28 U.S .C. § 2243 is DENIED as moot. (D.I.55.)
5. The Court declines to issue a certificate of appealability.

IT IS SO ORDERED.

D.Del.,2004.
Elliott v. Kearney
Not Reported in F.Supp.2d, 2004 WL 724958 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2007, I electronically filed the attached documents with the Clerk of Court using CM/ECF. I also hereby certify that on May 11, 2007, I have mailed by United States Postal Service, the same documents to the following non-registered participant:

Norman Ingram
SBI No. 00263838
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

/s/ James T. Wakley
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
Del. Bar. ID No. 4612
james.wakley@state.de.us

Date: May 11, 2007