## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **NORMAN INGRAM** | ) | |
| **Petitioner** | ) | |
| | ) | |
| **Vs.** | ) | **Civil Action No. 07-12- GMS** |
| | ) | |
| **THOMAS CARROLL, WARDEN** | ) | |
| **AND JOSEPH R. BIDEN III,** | ) | |
| **ATTORNEY GENERAL OF THE** | ) | |
| **STATE OF DELAWARE** | ) | |
| **Respondent** | ) | |
| | ) | |

**FILED**

MAR 1 1 2008

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

### Motion to Conduct an Evidentiary Hearing

Now comes, the Petitioner Norman Ingram who hereafter motions the court for an

Evidentiary Hearing on Ground One: In support of his motion for a Habeas Corpus

Relief. Because trial counsel conceded petitioner's guilt to the traffic violation allegations

by the police officers which provided probable cause to initially stop petitioner vehicle to

which no constitutional challenge was made to the validity of the police accusations. In

support of this motion the petitioner states the following:

1.    Petitioner Norman Ingram is entitled to an evidentiary hearing relating to the

ineffective assistance claim steaming from trial counsel's unreasonable strategic decision

to concede petitioner's guilt to the police officers' bogus traffic violation which

established the only basis for probable cause to stop his vehicle leading to the subsequent

search of both the vehicle and his person and afterward the seizure of illegal drugs.

Petitioner had a constitutional right under both Delaware's constitution and the United

States constitution to contest the initial stop of his vehicle by the police. See Caldwell V.
State,780 a2d 1037,1046-47(Del.Supr.2001). Delaware V. Prouse 99.S.Ct.1391(1979).

2. Trial counsel filed a sworn affidavit dated February 8,2005 in response to petitioner's
ineffective assistance allegation contained in the postconviction motion. In paragraph 5 of
his affidavit trial counsel states that petitioner allege in his postconviction motion that
counsel... "Failed to argue that because he was in a left turn lane where turning left was
mandatory, he was not required to use a turn signal".

3.     However if this court review the entirety of petitioner's postconviction motion, no
where in there does petitioner ever remotely suggest that he was not required to use his
turn signal to turn left or right.

4.     What petitioner did allege in his postconviction motion is that he did utilized his
left turn signal to move left to get into the left turn lane exiting Capital Park prior to
stopping at the traffic lights at the intersection of highway 113 intending to go left North
bound. Petitioner also allege in his postconviction motion that officer Disilvestro's
observed his whole course of travel leading from Capital Park and no where in officer
Disilvestro's testimony at the Suppression Hearing does he indicate that petitioner failed
to use his turn signal to get over into the left hand turn lane to exit Capital Park; that on
the contrary officer Disilvestro did admit that petitioner was the proper left turn lane
pursuant to 21 Del section 4155 and 4152(3) lawfully available to traffic controlled by a
traffic light to exit a left turn from Capital Park onto U.S.113; that in absent of an
allegation that petitioner failed to use his turn signal to "move right or light "pursuant to
21 Del.C.section 4155(b) to go into the proper lane to exit Capital Park this court must

accept petitioner's testimony at the Suppression Hearing (or contention herein) that he did utilize his turn signal at this point to initially cross over into the left turn lane.

5.      If trial counsel had properly investigated and present these exculpatory facts at the suppression hearing their is a reasonable probability that the trial Judge would have reviewed petitioner's testimony more credible then the very questionable two police officer's testimony.

6.      Thus. Since there is no allegation that petitioner failed to use his left turn signal to cross over into the left lane to turn left onto U.S. 113 and had the trial court accepted this as affirmative evidence in support of petitioner's testimony that he did in fact utilize his turn signal at this point prior to arriving at the intersection, then the question became- "Did petitioner still have his left hand turn signal on at the time he turned left onto U.S.113?

7.      If trial counsel had properly presented these facts at the suppression hearing then the answer to the above question was highly material in weighing the credibility of the police officer's and petitioner's testimony on the issue of whether the initial probable cause to stop petitioner's vehicle was lawfully established or valid.

8.      Thus, the attached Diagram of Capital Park and at the intersection of U.S. 113 is pertinent in answering the question whether petitioner turn signal was still on after utilizing it to get into the left turn lane to exit Capital Park and at the time he actually turned onto U.S. 113. First, if the court looks right of the Diagram (attached hereto) there is a small "substation"- This is the parking lot officer Disilvestro testified at the suppression hearing where he was monitoring traffic moving North bound and where he

observed petitioner's whole course of travel before turning left onto U.S. 113.

(Supp.Hr.Tr.pg.49-50 and compare it with directions on the Diagram Exihibit).

9.    Second, to the left of the sub station (on the diagram) is the beginning of "exit"
From Capital Park moving east bound from President Drive. The court will notice right at
the "1ˢᵗ Medium" Exit going across service road that in order to turn left at the
intersection up ahead the driver must first utilize his or her turn signal to get over into the
proper turn lane at the "2ⁿᵈ medium." The left hand turn at the intersection is mandatory
once the driver is in this particular lane. (See Diagram attached hereto).

10.    Third, when using the turn signal to merely move left or right to get into the
proper turning lane the signal will not automatically click-off because the steering wheel
is not turned sharp enough for the turn signal could have possibly shut- off after merely
moving over into the left turn lane is that petitioner shut- off the signal himself or the turn
signal device was defective or malfunction. Since petitioner testified he had his left turn
signal on then the first reason is dismissed. So that leaves us with the turn signal device
malfunctioning due to a defect in the vehicle.

11.    Fourth, the suv petitioner was driving was a rental vehicle from Avis.(see,
supp.Hr. Tr. C. Talley- Direct pg. 13). Thus, when petitioner rented this vehicle from
Avis there were no malfunctions in any of the devices or gauges.

12. Fifth, trial counsel should have obtained an inspection record on this vehicle from
Avis Rental Company to verify that the vehicle turn signal was in perfect
operation before and after petitioner's use of this vehicle.

13.    Sixth, trial counsel should have also subpoenaed a qualified personnel from Avis
rental company to demonstrate how the turn signal device function on this particular

Vehicle; that the turn signal will not automatically shut-off by a mere turn to move right or left; that there must be a significant sharp turn of the steering wheel in order for the turn signal to shut- off itself automatically.

Petitioner submitted a motion for a new trial, but was denied. Petitioner is arguing that "newly discovered evidence is in recognition of a miscarriage of justice." Petitioner is motioning the court to correct the miscarriage of justice. The Governor's Task Force was under investigation for corruption and drug tampering. Officer Mullet was investigated and indicted by a grand jury. Which ultimately brought a conviction!

Throughout the investigation it was alleged that the Task Force Officers were drug tampering to obtain arrests. It was also alleged that all the officers of the Task Force have access to the drug evidence locker. Petitioner communicated to his attorney prior to trial that he did not have any drug in his possession prior to being taken to the troop and that the drugs came from out of troop 3 evidence locker used to obtain a charge against the Petitioner. To substantiate Petitioner claim, a request for Brady material is necessary to determine that the officers involved in Petitioner's case were tampering with evidence confiscated from other arrest under Mullet investigation. The evidence would change the results if presented to the court. The evidence was discovered when officers from troop 3 testified at a jury that the Task Force was being investigated for drug tampering. The officers who testified was involved in my arrest. Attorneys who handled the tampering case, Sandra A. Dean, and William Deely, Public Defenders.

## **REASON WHY EVIDENTIARY HEARING SHOULD BE GRANTED**

(1)    The merits of the factual dispute were not resolved in the state hearing;(2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair hearing.( **Earp 431 F.3d 1185**).

Under the 4th Amendment, a traffic stop is a seizure of a vehicle and its occupants by the state. A stop is subject to constitutional limitations. **See, Caldwell, Del. Surp**. 780 A.2d at 1046-47. **Prouse** 440 U.S. at 661, 99 S. Ct. at 1400. **Valance V. Wisel,** 110 F.3d 1269, 1276 ( 7th **Cir**. 1997 ). First, the stop must be justified at its inception by reasonable suspicion of criminal activity. Id. Second, the stop and inquiry must be reasonably related in scope to the justification for their initiation. Id.

Here, trial counsel conceded Petitioner's guilt to the First inquiry under Caldwell that the stop must be justified at its inception by reasonable suspicion of criminal activity. In this case the police officers' reasonable suspicion for probable cause to initially stop Petitioner's vehicle was the allege traffic violation. **U.S. V. Mariscal,285 F.3d 1127**

Trial counsel did not challenge the validity of the allege Traffic violation for failure to signal a left hand turn, believing (without investigating ) that there was no direct or circumstantial evidence to impeach the police officers' testimony about the allege traffic violation and that which could have supported petitioner's testimony that he in fact utilized his turn signal throughout his course of travel to exit Capital Park onto the intersection of U.S. 113 north bound.

Had trial counsel properly investigated prior to the suppression hearing, he would have discover the exculpatory facts identified above in paragraphs 1 thru 13 that support a valid challenge to the initial stop based upon the allege traffic violation.

Because trial counsel failed to properly investigate and impeach the police officers' on cross examination with these new material facts, the prosecution argued successfully the lack of supporting evidence of petitioner's claim that he in fact utilized his left turn signal- The prosecution argued:

> So I think, your Honor weighing the evidence as the
> court has to do, I think weighing the two certain officers
> against the uncertain defendant, the court should find that
> reasonable suspicious for the stop.

See, Supp. Hr. pg. 99. On that same page of the Supp. Hr. Tr. (pg. 99) the prosecution also argued the fact that trial counsel... "Conceded in the motion that reasonable suspicious for the stop existed". Id.

Thus believing that there was no substantial factual proof to support petitioner's testimony and that which could adversely effect the weight of the police officer's allege "Certain" testimonies, as argued successfully by the prosecution with no challenge from trial counsel, the trial court denied petitioner's motion to suppress and petitioner was subsequently tried and convicted on all charges.

Moreover, since there was actual evidence that could been used to support the weight (the certainty) of the petitioner's testimony and creditability as a whole which was excluded through trial counsel's failure to properly investigate, call witnesses and challenge the initial probable cause to stop petitioner's vehicle, hence the trial court's factual finding on the probable cause issue to stop and search were not the product of and

orderly and logical deductive process. See, Palmer vs. State, 626 A.2d 1358, 1363 (Del.
Supr., 1993) where the Delaware Supreme Court Stated:

> At the suppression hearing the Superior Court
>
> made a factual determination that Palmer's presentment
>
> in Family Court was timely. Such a factual determination
>
> by a trial court will not be disturbed if it is sufficient
>
> supported by the record and is the product of an orderly
>
> and logically deductive process. Levitt vs. Bouvier, Del. Supr
>
> . 287 A2d 671 (1972).timely.

Therefore, in light of the new material facts and evidence outlined above in paragraphs 1
through 13, herein demonstrating how the trial counsel failed to investigate the
circumstances surrounding the allege traffic violation and then use that information to
challenge the validity of the initial probable cause to stop the petitioner vehicle created an
incomplete suppression hearing record and deducted process unworthy of reliability or
confidence in the outcome. See, Palmer vs. State, 626 A.2d 1358, 1363 (Del. Supr.,
1993).

Since this issue of weather or not trial counsel's performance fell below the
reasonable objective standard of Strickland vs. Washington, 466, u.s. 668, 104, S. Ct
2052, 80 L.2d 674 (1984), as here where counsel's error and omissions prejudice
petitioner's at the suppression hearing and on direct appeal the Delaware Supreme Court,
the Logic Deductive Process of both Palmer and Strickland held herein will be reviewed
de novo by the District Court on collateral appeal from these Habeas corpus proceedings,
thus in order to allow the appellant court's to fully review the claims herein, the District
Court must conduct an evidentiary hearing to establish an adequate state court record.

Initially on direct appeal the Delaware Supreme Court recognized that trial counsel did not challenge the initial probable cause to stop petitioner's vehicle.

See, Ingram V. State, Del. Supr. Ct. No. 617, 2003

(Order September 17, 2004 page 3, par. 6). Steele, C. J.

In his Post Conviction motion petitioner allege both that his trial counsel provided ineffective assistance by repeatedly conceding his guilt to the traffic violation and failed to challenge the probable cause to stop his vehicle there from at the suppression hearing and on direct appeal.

Wherefore, in order for the District Court to adequately reconsider this probable cause issue on collateral review, the District Court must grant this request for evidentiary hearing and expand the records with the new material facts and evidence set fourth in paragraph 1 thru 13 herein above. The Court's discretion to grant this request is govern by 28 U.S.C. § 2254 (d) (1) (2).

Respectfully submitted,

Date: March 7, 2008

Norman Ingram S.B.I. #00263838
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977



# Certificate of Service

I, Norman Ingram, hereby certify that I have served a true and correct cop(ies) of the

attached Motion To Conduct An Evidentiary Hearing, Upon the following parties/persons:

To:    James Turner Wakely
       Department Of Justice
       Carvel State Office Building
       820 French Street
       Wilmington, Delaware 19801

To:    Office of the Clerk.
       United States District Court
       844 N. King Street, Lockbox 18
       Wilmington, Delaware 19801

To:

To:

BY PLACING SAME IN A SEALED ENVELOPE, and depositing same in the United States
Mail at the Delaware Correctional Center, Smyrna, DE 19977.

On this 7 day of March, 2008

_Norman Ingram_
Norman Ingram



IMNorman Ingram

SBI# 263838    UNIT V

DELAWARE CORRECTIONAL CENTER

1181 PADDOCK ROAD

SMYRNA, DELAWARE 19977

Office of the Clerk

United States District Court

844 N. King Street, Lockbox 18

Wilmington, Delaware

19801