## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NORMAN INGRAM, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 07-12-GMS |
| | ) | |
| PERRY PHELPS, Warden, and | ) | |
| ATTORNEY GENERAL OF THE | ) | |
| STATE OF DELAWARE, | ) | |
| | ) | |
| Respondents.[1] | ) | |

---

Norman Ingram. *Pro se* petitioner.

James T. Wakley, Deputy Attorney General, Delaware Department of
Justice, Wilmington, Delaware.  Attorney for respondents.

---

### MEMORANDUM OPINION[2]

_____, 2008
Wilmington, Delaware

---

[1] Warden Perry Phelps assumed office in January, 2008, replacing Warden Thomas
Carroll, an original party to this case.  *See* Fed. R. Civ. P. 25(d)(1).

[2] The case was re-assigned from the Vacant Judgeship to this judge on February 1, 2008.



**Sleet, Chief Judge**

## I. INTRODUCTION

Petitioner Norman Ingram ("Ingram") is an inmate at the James T. Vaughn Correctional

Center in Smyrna, Delaware. Ingram filed the pending petition for a writ of habeas corpus

("petition") pursuant to 28 U.S.C. § 2254. (D.I. 2.) For the reasons that follow, the court will

dismiss his petition.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts leading to Ingram's arrest and conviction are as follows:

In May 2003, Officers Mentino DiSilvestro and Brian Talley, members of the Governor's Task Force, stopped Ingram's vehicle near Dover for failing to signal a left turn. DiSilvestro noticed a "faint odor" of alcohol, and that Ingram spoke with a low mumbled voice. After determining he had a valid license and no outstanding warrants, DiSilvestro asked Ingram to step out of the vehicle to perform field sobriety tests. Citing officer safety reasons, DiSilvestro first performed a pat-down search, which revealed neither contraband nor any weapons. As DiSilvestro began to administer the field tests, he observed two small plastic baggies protruding from Ingram's pocket.

Separately, Talley, who intended to only conduct a pat-down search, asked Ingram's passenger, Thomas Cubbage, to step out of the vehicle. Talley discovered cocaine in Cubbage's pocket. After learning that Talley had seized Cubbage's cocaine, DiSilvestro suspected that the plastic bags in Ingram's pocket were drug paraphernalia and arrested Ingram. During a later, more thorough search at the police station, officers seized a small bag of marijuana and two bags of crack cocaine from Ingram's person. The larger bag of cocaine weighed slightly over twenty-five grams. Under the driver's seat of Ingram's car, the officers, in a separate search, discovered a digital scale containing cocaine residue, as well as a roll of toilet paper in the rear of the hatchback.

Shortly before trial in December 2003, Ingram moved to suppress the evidence found on his person and in his car. After conducting a suppression hearing, the trial judge denied Ingram's motion. Following a bench trial, the judge convicted Ingram of several drug-related charges, including Trafficking in Cocaine and Possession with Intent to Deliver Cocaine.

*Ingram v. State*, 860 A.2d 810 (Table), 2004 WL 2154325, at *1 (Del. Sept. 17, 2004).

Thereafter, in October 2004, Ingram was convicted in Delaware Superior Court bench trial of trafficking in cocaine, possession with intent to deliver cocaine, maintaining a vehicle, possession of drug paraphernalia, possession of marijuana, and making a turn without signaling. The Superior Court sentenced Ingram to a term of thirty years of imprisonment for the possession with intent to deliver cocaine conviction, suspended after fifteen years. As for the trafficking in cocaine conviction, Ingram was sentenced to three years imprisonment. Ingram appealed, and the Delaware Supreme Court affirmed his convictions and sentences. *Id.*

In January 2005, acting *pro se,* Ingram filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61, arguing that: (1) defense counsel provided ineffective assistance by impermissibly conceding Ingram's guilt to the traffic violation which caused the police to stop Ingram in the first place; (2) the investigatory stop and detention of Ingram was the result of racial profiling and violated Ingram's Fourth Amendment rights; and (3) defense counsel provided ineffective assistance for failing to raise the issue of Miranda violations in the suppression motion. (D.I. 33.) The Rule 61 motion was referred to a Commissioner of the Superior Court, who issued a Report and Recommendation that the motion be denied as procedurally defaulted under Rule 61(i)(3) and as previously adjudicated under Rule 61(i)(4). *Id.* Ingram appealed the Commissioner's Report directly to the Delaware Supreme Court, and the Delaware Supreme Court dismissed the appeal as interlocutory. *Ingram v. State*, 2005 WL 3018288 (Del. 2005). The Superior Court adopted the Report and Recommendation on September 12, 2006 and denied the Rule 61 motion. *Id.* The record indicates that Ingram did not appeal that decision.

Ingram timely filed the instant § 2254 application. (D.I. 2.) The State filed an answer,

2

and Ingram filed a response and a motion for an evidentiary hearing. (D.I. 16; D.I. 27; D.I. 34.)
Ingram's petition is ready for review.

## III. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")
"to reduce delays in the execution of state and federal criminal sentences . . . and to further the
principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206
(2003)(internal citations and quotation marks omitted). Pursuant to AEDPA, a federal court may
consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in
violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).
AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas
petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are
given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see
Woodford*, 538 U.S. at 206.

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the
petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b);
*O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275
(1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to
> the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or

3

      (B)(i) there is an absence of available State corrective process; or
         (ii) circumstances exist that render such process ineffective to protect the rights of the
            applicant.

28 U.S.C. § 2254(b)(1).

     The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997)(citations omitted); *Coverdale v. Snyder*, 2000 WL 1897290, at *2 (D. Del. Dec. 22, 2000). "'Fair presentation' of a claim means that the petitioner 'must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted.'" *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004)(citing *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999)).

     A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Wenger v. Frank,* 266 F.3d 218, 223 (3d Cir. 2001); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Nevertheless, such unexhausted claims are procedurally defaulted. *Lines,* 208 F.3d at 160. Similarly, if a state court refused to consider a petitioner's claims for failing to comply with an independent and adequate state procedural rule, the claims are deemed exhausted but procedurally defaulted. *Harris v. Reed,* 489 U.S. 255, 263 (1989); *Werts*, 228 F.3d at 192.

     Federal courts may not consider the merits of procedurally defaulted claims unless the

4

petitioner demonstrates either cause for the procedural default and actual prejudice resulting

therefrom, or that a fundamental miscarriage of justice will result if the court does not review the

claims. *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman v. Thompson,* 501

U.S. 722, 750-51 (1991); *Caswell v. Ryan,* 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate

cause for a procedural default, a petitioner must show that "some objective factor external to the

defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v.

Carrier,* 477 U.S. 478, 488 (1986). A petitioner can demonstrate actual prejudice by showing

"not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to

his actual and substantial disadvantage, infecting his entire trial with error of constitutional

dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner

demonstrates that failure to review the claim will result in a fundamental miscarriage of justice.

*Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir.

2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation

has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at

496. Actual innocence means factual innocence, not legal insufficiency, *Bousley v. United

States*, 523 U.S. 614, 623 (1998), and is established if no reasonable juror would have voted to

find the petitioner guilty beyond a reasonable doubt. *Sweger v. Chesney,* 294 F.3d 506, 522-24

(3d Cir. 2002).

## IV. DISCUSSION

Ingram asserts two grounds for relief in his petition: (1) the police violated his Fourth

Amendment rights by searching his vehicle and person without probable cause; and (2) the police

5

officers falsely testified that they found cocaine on Ingram's person and tampered with evidence to support their testimony. The State contends that the petition should be denied in its entirety because claim one is not cognizable on federal habeas review, and claim two is procedurally barred.

## A. Claim one: Fourth Amendment violation

The State properly argues that Ingram's Fourth Amendment claim is not cognizable on federal habeas review under the doctrine established in *Stone v. Powell*, 428 U.S. 465, 494 (1976). In *Stone*, the Supreme Court held that federal courts cannot provide habeas review of Fourth Amendment claims if the petitioner had a full and fair opportunity to litigate Fourth Amendment claims in the state courts. *Id.*; *See Wright v. West*, 505 U.S. 277, 293 (1992)("We have also held . . . that claims under *Mapp* [alleging evidence obtained in violation of the Fourth Amendment] are not cognizable on habeas as long as the courts have provided a full and fair opportunity to litigate them at trial or on direct review."). A petitioner has had a full and fair opportunity to litigate such claims if the state has an available mechanism for suppressing evidence seized in or tainted by an illegal search or seizure, irrespective of whether the petitioner actually availed himself of that mechanism. *See U.S. ex rel. Hickey v. Jeffes*, 571 F.2d 762, 766 (3d Cir. 1978); *Boyd v. Mintz*, 631 F.2d 247, 250 (3d Cir. 1980); *Petillo v. New Jersey*, 562 F.2d 903, 906-07 (3d Cir. 1977). Conversely, a petitioner has not had a full and fair opportunity to litigate a Fourth Amendment claim, and therefore, avoids the *Stone* bar, if the state system contains a structural defect that prevented the state from fully and fairly hearing his Fourth Amendment claims. *Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002).

Here, Ingram had a full and fair opportunity to litigate his Fourth Amendment claim.

6

Ingram filed a pre-trial motion to suppress the evidence seized by police at the time of his arrest and argued that the police officers did not have a reasonable articulable suspicion to search his vehicle. The Superior Court denied the motion after conducting a hearing. Ingram presented the same claim to the Delaware Supreme Court on direct appeal, and the Delaware Supreme Court denied the claim as meritless. Accordingly, the court will deny claim one as barred by *Stone*.[3]

### B. Claim two: police perjury

In claim two, Ingram contends that the arresting officers perjured themselves at trial when they testified that they found drugs on Ingram's person. According to Ingram, the police officers "tampered" with the evidence and used drugs from a prior arrest to charge Ingram with possession.

Ingram contends, and the record indicates, that he presented this claim in his motion for new trial. (D.I. 2, at pp. 7-8; D.I. 31, Del. Super. Ct. Crim. Dkt. Entry No. 58.) The Superior Court denied the claim as meritless, but Ingram did not appeal that decision to the Delaware Supreme Court. Therefore, Ingram did not exhaust state remedies for claim two.

At this juncture, Ingram would be precluded from returning to state court for further review of the instant claim; the time-period for filing an appeal from the denial of the motion for new trial has long expired,[4] and Rule 61(i)(4) would bar Ingram from raising the claim in a new Rule 61 motion because the claim was formerly adjudicated. *See, e.g., White v. Carroll*, 416 F.

---

[3]Even if the Superior Court improperly denied Ingram's suppression motion, he still had a "full and fair opportunity to litigate" his Fourth Amendment claim. *See, e.g., Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002)(holding that "[a]n erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the [*Stone*] bar.") ; *Gilmore v. Marks*, 799 F.2d 51, 56 (3d Cir. 1986), *cert. denied*, 479 U.S. 1041 (1987).

[4]*See* Del. Supr. Ct. R. 6 (thirty day time period for filing a notice of appeal).

Supp. 2d 270, 281 n.10 (D. Del. 2006); *Kendall v. Atty. Gen. of DE,* 2002 WL 531221 (Del. Mar. 26, 2002).

Given Ingram's inability to obtain further review of claim two in the Delaware state courts, the court must excuse Ingram's failure to exhaust state remedies and treat the claim as exhausted. Nevertheless, the claim is still procedurally defaulted, and the court can only review the merits of claim two if Ingram demonstrates cause for, and prejudice resulting from, his default of the claim, or that a miscarriage of justice will result in the absence of such review.

In an attempt to establish cause, Ingram contends that he attempted to appeal the denial of his motion for new trial, but he mistakenly sent the notice of appeal to the Superior Court rather than the Delaware Supreme Court. However, this mistake was not an objective factor external to Ingram's defense that impeded his attempt to comply with Delaware's procedural rules, and therefore, does not constitute cause for Ingram's default. *See Cristin v. Brennan*, 281 F.3d 404, 420 (3d Cir. 2002)("Generally, 'cause' cannot be based on the mere inadvertence of the petitioner or petitioner's counsel to take an appeal.").

In the absence of cause, the court will not address the issue of prejudice. Additionally, the miscarriage of justice exception does not excuse Ingram's procedural default. Ingram contends that the police officer who arrested him was subsequently investigated and indicted for tampering with drugs. However, Ingram has failed to provide support for this assertion, and he has also failed to demonstrate that the alleged drug evidence tampering occurred in his case. Therefore, the court concludes that Ingram's conclusory allegation of drug tampering does not constitute new, reliable evidence of his actual innocence. Accordingly, the court will deny claim one as procedurally barred.

8

### C. Motion for evidentiary hearing

Ingram filed a motion for the court to conduct an evidentiary hearing on claim one. (D.I. 34.) Ingram contends that defense counsel provided ineffective assistance by conceding that Ingram committed the traffic violation which triggered the initial police stop and detention leading to his arrest and subsequent conviction.

The court has concluded that claim one does not warrant relief. Therefore, to the extent the instant motion constitutes an actual request for an evidentiary hearing with respect to claim one, the motion is denied.

Additionally, to the extent the instant motion constitutes an attempt to add a new claim of ineffective assistance to the petition, the motion to amend is denied. Ingram filed the motion after the State filed its answer. Pursuant to Federal Rule of Civil Procedure 15(a), once a responsive pleading is served, a federal district court may freely grant an amendment if "justice so requires." The record reveals that Ingram raised the same argument regarding counsel's "concession" in his Rule 61 motion, demonstrating that he was aware of the issue when he filed his initial petition. Accordingly, the court concludes that justice does not require adding the ineffective assistance of counsel claim to Ingram's original petition at this juncture.

## V. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. §

9

2253(c)(2);  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Further, when a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484.

The court concludes that Ingram's petition does not warrant federal habeas relief. Reasonable jurists would not find this conclusion to be debatable. Consequently, the court declines to issue a certificate of appealability.

## VI. CONCLUSION

For the reasons stated, Ingram's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied. An appropriate order shall issue.

10

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NORMAN INGRAM, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 07-12-GMS |
| | ) | |
| PERRY PHELPS, Warden, and | ) | |
| ATTORNEY GENERAL OF THE | ) | |
| STATE OF DELAWARE, | ) | |
| | ) | |
| Respondents. | ) | |

## ORDER

For the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY

ORDERED that:

1. Petitioner Norman Ingram's petition for the writ of habeas corpus filed pursuant to 28

U.S.C § 2254 is **DISMISSED**, and the relief requested therein is **DENIED**.  (D.I. 2.)

2. Ingram's motion for an evidentiary hearing is **DENIED**.  (D.I. 34.)

3. The court declines to issue a certificate of appealability due to Ingram's failure to

satisfy the standards set forth in 28 U.S.C. § 2253(c)(2).

Dated: _Sept 24_ , 2008

UNITED STATES DISTRICT JUDGE



**FILED**

SEP 2 5 2008

U.S. DISTRICT COURT
DISTRICT OF DELAWARE